**Daniel L. SOLIDAY and Cheryl L. Soliday, Appellants,**

v.

**HAYCOCK TOWNSHIP.**

Commonwealth Court of Pennsylvania.

Argued Sept. 12, 2001.

Decided Oct. 19, 2001.

**140**

Edward M. Wild, Doylestown, for appellants.

Terry W. Clemons, Doylestown, for appellee.

Before KELLEY, Judge, FLAHERTY, and JIULIANTE, Senior Judges.

JIULIANTE, Senior Judge.

Daniel L. and Cheryl L. Soliday (the Solidays) appeal from the December 5, 2000 order of the Court of Common Pleas of Bucks County (trial court) that affirmed the decision of the Haycock Township Board of Supervisors (Township) to approve a minor subdivision plan subject to certain conditions. We affirm.

In 1979, the Township and several neighboring municipalities adopted the Quakertown Area Subdivision and Land Development Ordinance (Ordinance) pursuant to Section 501 of the Pennsylvania Municipalities Planning Code (MPC).[1] Section 506(a) of the Ordinance establishes a standard street width of twenty-four feet within member municipalities. Ordinance § 506(a). Section 506(b)(3) provides that where a subdivision or land development abuts or contains an existing street of inadequate right-of-way, additional right-of-way width shall be dedicated to conform to the standards set by the municipality. Ordinance § 506(b)(3). Section 515(b) of the Ordinance further requires that curbs shall be constructed and the existing paved cartway shall be widened to the curb along all existing streets on which a subdivision or land development abuts. Ordinance § 515(b).

On November 23, 1998, the Solidays submitted an application for subdivision approval with the Township requesting that they be allowed to subdivide tax parcel 14–1–9–2, which is located on Creamery Road, into two residential building lots. The application included a minor subdivision plan.[2]

By letter dated November 27, 1998, the Township engineer noted that the Solidays' application failed to propose cartway, curb, and sidewalk improvements along Creamery Road as required by the Ordinance.[3] The Solidays thereafter submitted a request for waivers from the Ordinance requirements, as follows:

1. Section 506.B, Additional Rights of Way and Cartway Widths. We are re-

---

1. Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 10501, which provides that the governing body of each municipality may regulate subdivision and land development by enacting a subdivision and land development ordinance.

2. At the time of the application for subdivision, the Solidays had already built a house on Lot 1 and had sold it to a third party.

3. Under the MPC, subdivision and land development ordinances may include provisions insuring that streets in and bordering subdivisions or land developments be coordinated, and be of such widths and grades and in such locations as deemed necessary to accommodate prospective traffic and to facilitate fire protection. Section 503(2)(ii) of the MPC, 53 P.S. § 10503(2)(ii). It further allows subdivision and land ordinances to provide the standards for street designs, grades, improvements, walkways, curbs, gutters, street lights, fire hydrants and water and sewer facilities to be installed prior to final approval of the subdivision plans. Section 503(3) of the MPC, 53 P.S. § 10503(3).

questing a waiver for we are not proposing any further widening along [Creamery Road] due to the minimal impact upon the area.[4]

2. Section 515, Curbing. We are requesting a waiver of this section due to the desire to retain the rustic atmosphere of the Township.

3. Section 518, Sidewalks. We are requesting a waiver of this section due to the lack of pedestrian traffic in the area as well as the aforementioned desire to retain the existing character of the area.

(Trial court opinion, p. 2)

On June 7, 1999, the Township engineer prepared a second review letter that included a cost estimate to install cartway widening ($9,020.00), curbs ($8,170.00) and sidewalks ($8,202.00). The letter further recommended that the Solidays make a capital contribution to the Township in lieu of constructing the road improvements along Creamery Road. The Solidays submitted a second revised subdivision plan, but it likewise failed to include plans for roadway improvements.

On March 1, 1999, while the Solidays' application was pending, the Township adopted Resolution 99–3 (Resolution), which created a Highway Capital Improvement Fund (Fund). That Resolution authorized the acceptance of a uniform per-lot levy on proposed subdivisions in lieu of the requirement that landowners construct onsite frontage improvements mandated by the Ordinance. The levy was established at $3,000.00 per lot for an existing or proposed subdivision. The Resolution further provided that the Fund was to be used at the Township's discretion on road improvements at such time and in such locations as deemed appropriate.

The Township considered the Solidays' application at its public meeting held July 5, 1999. At the conclusion of the meeting, the Township approved the Solidays' application subject to the proviso that they comply with those conditions set forth in the Township's June 7, 1999 letter.[5] The Township granted the Solidays' request for waivers from the Ordinance requirements of curbs and sidewalks and, although not requested, street lighting. It declined to grant, however, a waiver from the cartway requirement. The Township's decision also provided the Solidays with the option of making a $6,000.00 capital contribution to the Fund in lieu of widening the cartway.

The Solidays appealed to the trial court, which remanded the matter to the Township for the purpose of an evidentiary hearing to supplement the record. Thereafter, the Township filed findings of fact and conclusions of the law supporting its decision to approve the Solidays' subdivision plan subject to the aforementioned conditions.

■ By order dated September 5, 2000, the trial court affirmed the Township's decision. We are now asked to consider whether the Township's refusal to waive the cartway requirement constituted an abuse of discretion or error of law and whether the Resolution is an illegal impact fee in violation of Section 503 A of the

4. In their request for waivers, the Solidays erroneously sought waivers along "Ridge Valley Road." In March of 1999, an identical request for waivers was submitted and correctly identified the reference to the frontage road as Creamery Road.

5. In addition to estimates for the proposed improvements, the letter further advised the Solidays that they would be required to enter into a maintenance agreement for a spray irrigation system, to install property monumentation and to revise the subdivision plan to show septic, well and tree clearing for the proposed second lot.

MPC.[6] On review, where the trial court took no additional evidence, we are limited to determining whether the board committed an error of law or abused its discretion. *State College Borough Water Auth. v. Bd. of Supervisors of Halfmoon Tp.*, 659 A.2d 640 (Pa.Cmwlth.1995).

Sections 512.1(a) and (b) of the MPC[7] provide as follows:

(a) The governing body or the planning agency, if authorized to approve applications within the subdivision and land development ordinance, may grant a modification of the requirements of one or more provisions if the literal enforcement will exact undue hardship because of peculiar conditions pertaining to the land in question, provided that such modification will not be contrary to the public interest and that the purpose and intent of the ordinance is observed.

(b) All requests for a modification shall be in writing and shall accompany and be a part of the application for development. The request shall state in full the grounds and facts of unreasonableness or hardship on which the request is based, the provision or provisions of the ordinance involved and the minimum modification necessary.

In denying the request for a waiver of the cartway requirement, the Township noted that the Solidays' frontage along Creamery Road is 1,000 feet and the width of it is 12 feet.[8] (Findings of Fact "F.F." 28, 29) Creamery Road is partly stone and partly "seal coat." (F.F.29) It is essentially a one-lane road, as two vehicles cannot pass without one of them moving off the cartway, including emergency vehicles. (F.F.30, 31, 32)

The Township accepted as fact the testimony of its engineer that because Creamery Road is deficient, cartway-widening improvements should be installed along the entire frontage of the Solidays' property. (F.F.34) Additionally, the Township acknowledged that other parcels along Creamery Road are large enough for further subdivision. (F.F.35, 36) The Township's only opportunity to review the condition of Creamery Road along the Solidays' property is while their subdivision plan is pending. (F.F.37) In its current state, Creamery Road is insufficient to provide a safe means of ingress and egress for a six or ten lot subdivision. (F.F.37, 38)

The Township also found that a contribution to the Fund by the Solidays would allow it to construct road improvements along Creamery Road in a coordinated fashion. Besides being more economical to both property owners and the Township, it would avoid piecemeal (and disjointed) improvement of the road.

The Township further noted that the Solidays' engineer acknowledged that he did not give any consideration to widening the cartway when he submitted the Solidays' request for waivers and that he did not read the MPC to determine the requirements for modification. (F.F.41, 42) The engineer made no effort to develop alternate plans for modification providing

---

6. Added by Section 1 of the Act of December 19, 1990, P.L. 1343, 53 P.S. § 10503–A.

7. Added by Section 40 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10512.1(a) and (b).

8. We note that neither the Township nor the trial court commented on the Solidays' failure to comply with Section 512.1 of the MPC wherein the request for waivers did not allege any hardship or state the full grounds or facts of unreasonableness upon which the request was made. Additionally, the request for waivers did not provide any plans for minimum modification.

for something less than what is required by the Ordinance. (F.F.42)

The Township thus concluded that Creamery Road presented a dangerous condition and that cartway widening would promote conditions favorable to the public health, safety and welfare of the Township. Our review of the record reveals that the Township's findings of fact and conclusions of law are supported by substantial evidence and that, therefore, the Township did not abuse its discretion in denying the Solidays' request for a waiver of Section 506.B of the Ordinance.

The Solidays maintain that this case is controlled by another Bucks County case, *Ruf v. Buckingham Tp.*, 765 A.2d 1166 (Pa.Cmwlth.2001). We disagree.

The Rufs owned a 5.04–acre tract of land located in an AG–1 agricultural zoning district, in which a detached single-family dwelling was permitted under the township's zoning ordinance. In 1994, the Rufs obtained a building permit to construct a detached single-family dwelling on the property. In 1995 they submitted a subdivision plan with the township, proposing to subdivide the 5.04 acres into two lots: a 2.623–acre lot for their residence under construction and a 2.421–acre lot for another single-family dwelling.

The Rufs' property abutted Holicong Road for 500–feet. Holicong Road was generally ten to eighteen feet wide and only ten to fourteen feet wide in front of the Rufs' property. The road had no shoulders, sidewalks or curbs. The road extended up and down Buckingham Mountain.

The township board rejected the Rufs' original plan because it did not meet the requirements of the township's zoning ordinance for natural resource protection and its subdivision and land development ordinance (land ordinance). Thereafter, the township rejected the Rufs' revised plan requesting waivers from the land ordinance.

On appeal, the lower court remanded the matter to allow the township to consider the Rufs' request for waivers and to make a record of the proceedings. After remand, the township once again rejected the Rufs' request, concluding that the land ordinance required an applicant to widen the roadway fronting the property to be subdivided to twenty-four feet. The township further concluded that the Rufs' plan failed to provide for at least a seventy-five percent reduction in storm water runoff as required by the land ordinance. Additionally, the township determined that the Rufs' plan failed to meet the requirements of the natural resource protection standards.

The lower court reversed and the township appealed to this Court. In affirming the lower court, we noted several factors that weighed heavily in favor of granting the requested waivers. First, the Rufs presented evidence that because their property was on the steep slope of Buckingham Mountain, they would have been required to blast into the mountain to construct the right-of-way. Secondly, they presented evidence that the township engineer and the public works director admitted that proper road widening might not have been feasible because of the existing conditions of the road and the high costs involved. Thirdly, the Rufs proposed an alternate plan to the land ordinance that was approved by the township engineer and the public works director. And finally, the evidence further demonstrated that the Rufs could not comply with the land ordinance and the natural resource protection standards at the same time. Given the overwhelming evidence presented by the Rufs and the township's complete disregard of it, we agreed with the lower

court that the denial of the waivers would be unreasonable and cause undue hardship.

■ This is simply not the case before us. Presently, Mr. Soliday testified only that there were mature trees on the property that would need to be removed. Trees, in and of themselves, do not constitute conditions peculiar to the land. The Solidays failed to provide any evidence suggesting the costs of removing the trees; the Township presented the only evidence relating to the cost of widening Creamery Road. There is no other evidence suggesting that the property contains peculiar conditions allowing the Township to authorize a modification of the Ordinance requirements. Moreover, the Solidays failed to suggest any alternate plans other than what was required under the Ordinance. Thus, we conclude that the trial court did not err in determining that *Ruf* is inapplicable.

■ In their second argument, the Solidays maintain that the Resolution establishing the Fund violates Section 503–A of the MPC. That section allows a municipality to enact impact fee ordinances and to establish the amount of the impact fee for any offsite public transportation capital improvements as a condition precedent to final plat approval under a municipality's subdivision and land ordinance. An impact fee is defined as "a charge or fee imposed by a municipality against new development in order to generate revenue for funding the costs of transportation capital improvements necessitated by and attributable to the new development." Section 502–A of the MPC.[9]

The Solidays' position is two-pronged: the Resolution is an unlawful and procedurally improper impact fee and it is an improper retroactive application of a regulation to a previously filed and pending plan. The trial court disagreed and so must we.

The Solidays point out that the Township did not pass a formal municipal impact fee ordinance pursuant to Section 503–A(c) of the MPC,[10] it did not form an advisory committee pursuant to Section 504–A(b)(1) of the MPC,[11] and it did not develop land use plans pursuant to Section 504–A(c)(1) of the MPC.[12] Thus, they contend that the Resolution is invalid.

Section 503–A(b) of the MPC [13] provides that municipalities shall not require the construction, dedication or payment of any *offsite* improvements or capital expenditures whatsoever or impose any contribution in lieu thereof as a condition precedent to the approval of a land development or subdivision.[14] However, the Resolution does not require contributions for *offsite* improvements. Rather, the Solidays are required by the Ordinance to make *onsite* improvements.[15] Thus, the language of

9. *See supra* note 6, at 4, 53 P.S. § 10502–A.

10. *See supra* note 6, at 4, 53 P.S. § 10503–A(c).

11. *See supra* note 6, at 4, 53 P.S. § 10504–A(b)(1).

12. *See supra* note 6, at 4, 53 P.S. § 10504–A(c)(1).

13. *See supra* note 6, at 4, 53 P.S. § 10503–A(b).

14. The MPC defines "offsite improvements" as "those public capital improvements which are not onsite improvements and that serve the needs of more than one development." 53 P.S. § 10502–A.

15. The MPC defines "onsite improvements" as "all improvements constructed on the applicant's property, or the improvements constructed on the property abutting the applicant's property necessary for the ingress or egress to the applicant's property, and required to be constructed by the applicant pur-

Section 503–A(b) does not prohibit a municipality from accepting payments in lieu of *onsite* improvements.

Moreover, the Resolution does not obligate a property owner to make a contribution to the Fund in order to obtain approval of land development or subdivision plans. The Resolution reserves to the property owner the right to make the improvements required under the Ordinance *or* to make a contribution to the Fund. The option provided by the Resolution allows a property owner to compare the costs involved in making the improvements on his own with that of the established per-lot contribution. In this particular case, the only evidence presented regarding the costs of complying with the Ordinance demonstrated that the Solidays would save nearly $3,000.00 by making a capital contribution to the Fund rather than making the improvements themselves.

■ The Solidays further maintain that the Resolution is invalid because it is an improper retroactive application of a regulation to a properly filed and pending plan. The Solidays filed their subdivision plan on November 23, 1998 and the Resolution was passed on March 1, 1999.

Section 508(4) of the MPC [16] provides as follows:

(4) Changes in the ordinance shall affect plats as follows:

(i) From the time an application for approval of a plat, whether preliminary or final, is duly filed as provided in the subdivision and land development ordinance, and while such application is pending approval or disapproval, no change or amendment of the zoning, subdivision or other governing ordinance or plan shall affect the decision on such application *adversely* to the applicant and the applicant shall be entitled to a decision in accordance with the provisions of the governing ordinances or plans as they stood at the time the application was duly filed.... (Emphasis added.)

The Resolution does not *adversely* affect the Solidays. The Ordinance requires that the cartway abutting the Solidays' property be widened; the requested waiver of that obligation was denied. Prior to passage of the Resolution, the only option to the Solidays was to contract for the improvements or to abandon their plans for subdivision. After passage of the Resolution, the Solidays were given a choice that was previously unavailable. To reiterate, the Resolution does not require the property owner to contribute to the Fund in order to gain approval of land development or subdivision plans. The Resolution provides an alternate venue for property owners to obtain approval of land development or subdivision plans without incurring significant expenses related to compliance with the Ordinance. Thus, the Resolution does not adversely affect a property owner's ability to gain approval of his plan.[17]

Accordingly, we affirm.

---

suant to any municipal ordinance, including, but not limited to, the municipal building code, subdivision and land development ordinance, PRD regulations and zoning ordinance." 53 P.S. § 10502–A.

**16.** 53 P.S. § 10508(4).

**17.** The Solidays further suggest that their plan was deemed approved pursuant to Section 508(3) of the MPC, 53 P.S. § 10508(3), because the Township failed to specify the defects in their application and to provide citations to the Ordinance upon which it relied. *See* Appellants' brief, p. 25. The Solidays failed, however, to raise this issue before the trial court and, therefore, it is waived. *Bailey v. Upper Southampton Tp.* 690 A.2d 1324 (Pa.Cmwlth.1997).

## ORDER

AND NOW, 19th day of October, 2001, the December 5, 2000 order of the Court of Common Pleas of Bucks County is AF-FIRMED.