John TROJNACKI, Appellant

v.

**BOARD OF SUPERVISORS SOLEBURY TOWNSHIP.**

Commonwealth Court of Pennsylvania.

Argued Nov. 4, 2003.

Decided Feb. 11, 2004.

504

David F. Gould, III, Doylestown, for appellant.

Stephen B. Harris, Warrington, for appellee.

BEFORE: COHN, Judge, and LEAVITT, Judge, and JIULIANTE, Senior Judge.

OPINION BY Judge LEAVITT.

John Trojnacki (Landowner) appeals from the Order of the Court of Common Pleas of Bucks County (trial court) which dismissed his complaint in mandamus and affirmed the decision of the Board of Supervisors of Solebury Township (Board)

denying the Landowner's final subdivision plan. At issue in this case is the validity of Section 6.17 of the Solebury Township Subdivision and Land Development Ordinance (Ordinance), known as the Solebury Township Tree Replacement Ordinance (STTRO),[1] which purports to require a landowner to plant replacement trees off-site in some circumstances.

Landowner is the owner of a seven acre tract in Solebury Township, Bucks County. There are currently two buildings on the property: a bed and breakfast and Landowner's private residence. Landowner seeks to subdivide the tract into two lots: a 3.86 acre lot that will contain the existing buildings and a 3.14 acre unimproved lot to be sold for residential building purposes. Landowner's preliminary subdivision plan was rejected by the Board; however, following an appeal, the trial court reversed and ordered the Board to grant approval of the preliminary subdivision plan, conditioned upon Landowner's compliance with the STTRO.

On July 8, 2002, Landowner submitted a final subdivision plan to the Board. In this plan, Landowner estimated that his proposed improvements would necessitate the removal of 76 trees of varying sizes,[2] and he estimated that, in order to comply with the STTRO, he would have to plant 336 replacement trees. Landowner further estimated that only twenty-five of the replacement trees could be planted on-site, in a storm water management area. Since the remainder of the lot is entirely wooded, Landowner requested "discussion of providing a fee in lieu of tree replacement." R.R. 137a. On December 3, 2002, the Board disapproved Landowner's final plan. The Board's decision was memorialized in a letter to Landowner dated De-

---

1. Pursuant to the STTRO, a developer must replace every tree over a certain size that is removed during development with a tree or number of trees of similar size, either at another location on the property or at an offsite location to be determined by the Board. Specifically, the STTRO provides as follows:

   E. Trees of six (6) inches or more which are to be removed or destroyed during any stage of development grading and/or construction within a subdivision or land development shall be replaced with a tree or trees of the type provided in Section 5.14.H of this Ordinance. Said replacement trees shall meet the following size limitations:

   1. Trees with a diameter of six (6) inches or more but less than ten (10) inches which are revoked shall each be replaced with a tree of a like caliper or no less than two (2) trees measuring three (3) to four (4) inches in diameter.
   2. Trees with a diameter of ten (10) inches or more but less than fifteen (15) inches which are removed shall each be replaced with a tree of a like caliper or no less than four (4) trees measuring three (3) to four (4) inches in diameter.
   3. Trees with a diameter of fifteen (15) inches or more but less than twenty-four (24) inches which are removed shall each be replaced with no less than six (6) trees measuring three (3) to four (4) inches in diameter.
   4. Trees with a diameter of twenty-four (24) inches or more which are removed shall each be replaced no less than ten (10) trees measuring three (3) to four (4) inches in diameter.

   All replacement trees shall be measured at a height of four (4) feet above the finished grade level. Replacement trees may be planted within, but not in place of, required buffers, street trees, trees in parking lots or trees planted on individual lots or common open space. Where development takes place on fully wooded lots, the Township may designate off-site areas where replacement trees shall be planted.

   SOLEBURY TOWNSHIP, PA., SUBDIVISION AND LAND DEVELOPMENT ORDINANCE, § 6.17(E), *as amended by* ORDINANCE No. 01–185 (April 3, 2001). Reproduced Record, 333a (R.R. _____).

2. Landowner's tree removal and replacement estimates were based on data taken from a sample area on the property measuring 100′ by 100′ (10,000 square feet). R.R. 137a.

cember 13, 2002, which stated, in pertinent part, as follows:

> The Final Subdivision Plan was denied because it fails to comply with the tree replacement requirements of Section 6.17 of the Solebury Township Subdivision and Land Development Ordinance (See Township Ordinance No. 01–185). Furthermore, the Subdivision Plan fails to provide for implementation of the tree replacement provisions contained in Section 6.17 of the Solebury Township Subdivision and Land Development Ordinance as required by Judge John J. Rufe's Opinion and Order of the 12th day of June, 2002.

R.R. 108a–109a.

On January 3, 2003, Landowner filed two pleadings with the trial court. The first was an appeal from the Board's denial of his final plan entitled "Second Notice of Land Use and Subdivision Appeal." The second was a Complaint in Mandamus and Motion for Peremptory Judgment requesting that the court order the Board to approve the final subdivision plan. The trial court consolidated Landowner's land use appeal and mandamus action and received no additional evidence. In an opinion and order dated May 16, 2003, the trial court denied Landowner's land use appeal and dismissed his mandamus action with prejudice. Landowner filed a motion for reconsideration of the trial court's order, which was denied on June 5, 2003. This timely appeal followed.

■ Landowner raises the following issues for our consideration:

A. Whether the subdivision ordinance as applied to [Landowner]'s subdivision plan is illegal under the [Pennsylvania Municipalities Planning Code [3]] (MPC) and constitutional law.

B. Whether the [] Board satisfied the sufficiency requirements for subdivision denials stated in Section 508 [4] of the [MPC].

C. Whether the [] Board met its duty of good faith in its review of subdivision plans as imposed under Pennsylvania law.

D. Whether there was a clear legal right in [Landowner] and corresponding duty in [Board] to approve [Landowner]'s subdivision plan and to approve it in a manner sufficient under Section 508 of the [MPC].

Brief for Appellant, at 6.[5]

■ Before addressing Landowner's issues, we must first consider the Board's argument that Landowner never requested a waiver or modification of the STTRO requirements, as was his right under the Ordinance, and therefore, he has failed to exhaust his administrative remedies. The trial court accepted the Board's argument, noting that "[Landowner] must submit a plan in accordance with the STTRO, and upon submission request a variance if he believes the costs of the replacement are prohibitive." Opinion, at 6.

The MPC specifically allows for a board of supervisors to modify the provisions of a subdivision ordinance that are unreasonable or cause undue hardship:

---

**3.** Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §§ 10101–11202.

**4.** 53 P.S. § 10508.

**5.** In analyzing land use appeals, where the trial court does not receive any additional

evidence, we are limited to determining whether the board committed an abuse of discretion or an error of law. *Sweeney v. Zoning Hearing Board of Merion Township,* 674 A.2d 1190 (Pa.Cmwlth.1996).

(a) The governing body or the planning agency, if authorized to approve applications within the subdivision and land development ordinance, may grant a modification of the requirements of one or more provisions if the literal enforcement will exact undue hardship because of peculiar conditions pertaining to the land in question, provided that such modification will not be contrary to the public interest and that the purpose and intent of the ordinance is observed.

(b) All requests for a modification shall be in writing and shall accompany and be a part of the application for development. The request shall state in full the grounds and facts of unreasonableness or hardship on which the request is based, the provision or provisions of the ordinance involved and the minimum modification necessary.

(c) If approval power is reserved by the governing body, the request for modification may be referred to the planning agency for advisory comments.

(d) The governing body or the planning agency, as the case may be, shall keep a written record of all action on all requests for modifications.

53 P.S. § 10512.1. The Ordinance enacted by the Township sets forth procedures similar to those suggested by the MPC:

A. If any mandatory provisions of these regulations are shown by the applicant, to the satisfaction of the Board of Supervisors to be unreasonable, to cause undue hardship, or that an alternate standard can provide equal or better results, the Board of Supervisors may grant a modification to that provision. A modification may be granted provid-ed it will not be contrary to public interest and the purpose and intent of this ordinance is maintained.

B. All requests for modifications shall be in writing and signed by the applicant. The request shall state the reasons and grounds for why the provision is unreasonable or the hardship imposed, and shall discuss the minimum modification necessary.

. . . .

D. The Board of Supervisors shall request an advisory opinion on the modification request from the Planning Commission.

E. In granting modifications, the Board of Supervisors may impose such conditions as will, in its judgment, secure substantially the objectives of the standards or requirements so modified.

Ordinance, § 2.00.

The above provisions, in our view, create a rather informal procedure for requesting and obtaining a modification of the regulations imposed by the Ordinance. In any event, we disagree with the trial court that Landowner failed to avail himself of the above procedures. Landowner submitted a final subdivision plan, in writing, that estimated the number of trees to be removed and the number of replacement trees required by the STTRO. R.R. 137a. Just below these estimates, Landowner stated that he was willing to discuss "providing a fee in lieu of tree replacement as the lot is entirely wooded other than the area of proposed improvements." *Id.* Landowner's statement was, in effect, a request for modification of the tree replacement provision of the ordinance. Landowner's attorney also requested on numerous occasions, both in writing and orally, that the STTRO be declared invalid or, at the very least, not applied to Land-

owner's application.[6] Although the Board chose not to respond to these requests, we find that to the extent there were administrative remedies available, Landowner exhausted them. Finally, and most significantly, the trial court elected to address the validity of the STTRO. Therefore, consistent with our standard of review, we must determine whether the Board erred in upholding the STTRO.

This brings us to Landowner's first issue on appeal, in which he challenges the following provision in the STTRO:

> Where development takes place on fully wooded lots, the Township may designate off-site areas where replacement trees shall be planted.

Ordinance, § 6.17(E).[7] Landowner argues that the quoted provision is expressly prohibited by Section 503–A(b)[8] of the MPC, which provides as follows:

(b) No municipality shall have the power to require as a condition for approval of a land development or subdivision application the construction, dedication or payment of any offsite improvements or capital expenditures of any nature whatsoever or impose any contribution in lieu thereof, exaction fee, or any connection, tapping or similar fee except as may be specifically authorized under this act.

53 P.S. § 10503–A(b). In Landowner's view, requiring him to plant trees at a designated offsite area falls within the purview of "offsite improvements or capital expenditures" forbidden by Section 503–A(b).

The Board counters that Section 503–A, entitled "Grant of power," as part of Article V–A of the MPC, governs only "municipal capital improvements," and, specifical-

---

6. For example, Landowner's counsel wrote a letter to the Board on September 19, 2002 stating that the offsite tree replacement provision of the STTRO is "directly prohibited by the Municipalities Planning Code[,] Section 503–A(b), 53 P.S. Section 10503–A." R.R. 173a. Counsel continued, "[a]s it concerns this application and others identical to it, I suggest that the Ordinance be amended to strike the provision for 'fully wooded lots' on the grounds of its being illegal under the MPC, and agreement reached that the Ordinance should not have effect on this application." R.R. 174a. In a letter dated September 26, 2002, the Board responded that "your request to discuss this issue during the October 1st Board of Supervisors Meeting must be declined," and reminded Landowner that he had been advised to consult with the Township Park & Recreation Board "to determine if there was potential to comply with the requirements by providing trees at any of the Township parks." R.R. 168a. Counsel responded on October 1, 2002, that "[y]our refusal to meet with [my client] missed the point of my September 19th letter. My letter conveyed, that the application of the [STTRO] to my client's Application is clearly illegal under Section 503 of the MPC .... your response suggests that my client pursue the

course prohibited by the MPC, recommending that my client make 'a good faith effort' to consult with the Parks and Recreation Committee to locate a possible off site planting area." R.R. 167a. Counsel reiterated Landowner's legal position in a letter to the Board dated October 24, 2002, also stating that counsel had spoken to the Township Solicitor "and he has offered no support or justification for your application of the [STTRO] to my client, and said he would not provide a written response to my client's position absent a request by the Township...." R.R. 158a. The minutes of the Board's meeting of December 3, 2002 contain a heated exchange between the parties regarding the tree replacement issue. A review of the communications between the parties indicates that the Board repeatedly ignored Landowner's position throughout the approval process.

7. The parties do not dispute that, with the exception of the stormwater management area, Landowner's property is "fully wooded."

8. Section 503–A(b) of the MPC, added by § 1 of the Act of December 19, 1990, P.L. 1343, as amended, 53 P.S. § 10503–A(b).

ly, the imposition of traffic impact fees. *See* 53 P.S. § 10503–A(a). In the Board's view, Landowner's reliance upon Section 503–A is misplaced since it is not asking Landowner to construct or contribute to any offsite transportation capital improvements. The trial court agreed with the Board's interpretation and found, as a matter of law, that the STTRO is valid under the MPC because it "was not enacted with the nefarious purpose of raising funds for capital expenditures as is prohibited by [Section 503–A of the MPC]." Opinion, at 2–3. We disagree.

▇▇▇ In reviewing the court's analysis, we are guided by the following principles of statutory construction:

> Although the Statutory Construction Act, 1 Pa.C.S. §§ 1501–1991, does not apply expressly to zoning and subdivision ordinances, the principles contained in that act are followed in construing a local ordinance. *Patricca v. Zoning Board of Adjustment,* 527 Pa. 267, 274, 590 A.2d 744, 747 (1991); *Council of Middletown Township v. Benham,* 514 Pa. 176, 523 A.2d 311 (1987). Words and phrases of local ordinances shall be construed according to the rules of grammar and according to their common and approved usage. 1 Pa.C.S. § 1903(a); *Patricca,* 527 Pa. at 274, 590 A.2d at 747–48. Zoning ordinances should be construed in a sensible manner. *Council of Middletown Township,* 514 Pa. at 187, 523 A.2d at 317. In interpreting provisions of a zoning ordinance, undefined terms must be given their plain, ordinary meaning, 1 Pa.C.S. § 1903(a), and any doubt must be resolved in favor of the landowner and the least restrictive use of the land. *Appeal of Mt. Laurel Racing Association,* 73 Pa.Commonwealth Ct. 531, 534–35, 458 A.2d 1043, 1044–45 (1983).

*Tobin v. Radnor Township Board of Commissioners,* 142 Pa.Cmwlth. 567, 597 A.2d 1258, 1264 (1991).

We agree with Landowner that the interpretation of Section 503 A asserted by the Board, and adopted by the trial court, is unduly narrow. The Board is correct that Section 503–A(a) authorizes a municipality to establish impact fee ordinances for "any of the offsite public transportation capital improvements authorized by [the MPC] as a condition precedent to final plat approval." 53 P.S. § 10503–A(a). However, Section 503–A(b), at issue here, states in decidedly broad terms that "[n]o municipality shall have the power to require as a condition for approval of a land development or subdivision application the construction, dedication or payment *of any offsite improvements or capital expenditures of any nature whatsoever* or impose any contribution in lieu thereof. . . ." 53 P.S. § 10503–A(b) (emphasis added). The legislature's use of the phrase "of any nature whatsoever" evinces the broad scope of Section 503–A(b)'s prohibition. Section 503–A(a), on the other hand, describes one type of offsite improvement or capital expenditure specifically authorized under the MPC: an impact fee for offsite public transportation capital improvements.

Previous decisions of this Court have employed a similar analysis. For example, in *Municipality of Monroeville v. Prin,* 680 A.2d 9 (Pa.Cmwlth.1996), property owners and prospective developers applied to perform excavation for construction of a shopping center. The Monroeville Council conditioned its approval on the developers making traffic improvements to intersections more than one mile from the property. Although our decision in favor of the developers turned on a zoning issue that is not relevant to the instant appeal, we noted, alternatively, that Council's "attempt to impose conditions of off-site improvements

in violation of [MPC] Section 503–A at a minimum constituted an error of law." *Id.* at 14. The Board's attempt to impose similar conditions on Landowner in this case likewise constitutes an error of law.

Also instructive is *Soliday v. Haycock Township,* 785 A.2d 139 (Pa.Cmwlth.2001). The Solidays, like the Landowner in this case, sought to subdivide their parcel into two residential building lots. At issue was a resolution passed by the Township that authorized the acceptance of a per-lot levy on proposed subdivisions in lieu of compliance with certain onsite frontage improvements mandated by the Township's ordinance, such as widening the existing cartway along abutting streets. In upholding the resolution, this Court emphasized that

> the Resolution does not require contributions for *offsite* improvements. Rather, the [landowners] are required by the Ordinance to make *onsite* improvements. Thus, the language of [MPC] Section 503–A(b) does not prohibit a municipality from accepting payments in lieu of *onsite* improvements.

*Id.* at 144–145 (emphasis original). The clear implication is that Section 503–A allows municipalities to condition subdivision approval on *onsite* improvements, or even fees in lieu thereof, but the statute disallows such practices with regard to *offsite* improvements.

Returning to our statutory analysis, Article V–A defines "offsite improvements" as "those public capital improvements which are not onsite improvements [9] and that serve the needs of more than one development." 53 P.S. § 10502–A. Although "public capital improvements" is not defined in the MPC, the plain, ordinary meaning of that term would certainly include planting trees in order to maintain the arboreal *status quo* of a township. Construing Section 503–A(b) to prohibit the Board from enforcing the STTRO's offsite planting provision also comports with the goal of resolving any doubt in favor of the landowner and the least restrictive use of the land. *Tobin,* 597 A.2d at 1264.[10]

In light of the foregoing analysis, we find that the trial court erred as a matter of law in upholding the offsite tree replacement provision of the STTRO. That provision is invalid under Section 503–A(b) of the MPC. Because we invalidate the disputed portion of the Ordinance on statutory grounds, we need not address Landowner's constitutional challenge.[11]

In his final issue, Landowner argues that the trial court erred in denying his request for mandamus relief. "Mandamus is an extraordinary writ which lies to compel the performance of a ministerial act or mandatory duty where there

---

**9.** "Onsite improvements" are defined as "all improvements constructed on the applicant's property, or the improvements constructed on the property abutting the applicant's property necessary for the ingress or egress to the applicant's property, and required to be constructed by the applicant pursuant to any municipal ordinance, including, but not limited to, the municipal building code, subdivision and land development ordinance, PRD regulations and zoning ordinance." 53 P.S. § 10502–A.

**10.** We note that Landowner's offer to discuss paying a fee in lieu of offsite tree replacement would likewise run afoul of Section 503–A(b). Section 503–A(b) expressly prohibits a municipality from imposing *any contribution in lieu of* any offsite improvements or capital expenditures.

**11.** It is also unnecessary for us to consider Landowner's second and third issues on appeal relating to the sufficiency of the Board's written explanation for denying his final subdivision plan and whether the Board reviewed his plan in good faith.

is a Clear legal right in the plaintiff, a corresponding duty in the defendant, and a want of any other appropriate and adequate remedy." *Unger v. Township of Hampton,* 437 Pa. 399, 401, 263 A.2d 385, 387 (1970). "Mandamus continues to be available as a remedy where entitlement to issuance of a land use approval is clear." *Stoner v. Township of Lower Merion,* 138 Pa.Cmwlth. 257, 587 A.2d 879, 881 (1991).

At first blush it would appear that Landowner's entitlement to land use approval is clear since the sole reason for the Board's denial of his final subdivision plan was failure to comply with the tree replacement provisions of the Ordinance. This is not the case. Although we determine that the *offsite* tree replacement provision of the Ordinance for fully-wooded lots is invalid under the MPC, the requirement that Landowner plant replacement trees *onsite* survives our decision.[12] Moreover, Landowner does not challenge the STTRO to the extent that it requires him to plant replacement trees onsite, and he has admitted in his final subdivision plan that approximately twenty-five of the required replacement trees could be planted in a portion of the tract that is not fully wooded and which has been set aside for stormwater management. In sum, approval by the Board is still, at this point, discretionary rather than mandatory, and not a simple ministerial act. Landowner is not entitled to mandamus relief and the trial court properly dismissed his complaint on that ground.

In conclusion, we find that the offsite tree replacement provision of Section 6.17(E) of the Ordinance is invalid under

the MPC. The Board erred as a matter of law in enforcing that provision as a condition for approval of Landowner's final subdivision plan. The order of the trial court is therefore reversed insofar as it denied Landowner's land use appeal. The trial court's order is affirmed insofar as it dismissed Landowner's complaint in mandamus since Landowner was not entitled to mandamus relief. The matter is remanded to the trial court with direction to remand to the Board so that it may review Landowner's final subdivision application in a manner consistent with this opinion.

Accordingly, the order of the trial court is affirmed in part and reversed in part.

### ORDER

AND NOW, this 11th day of February, 2004, the order of the Court of Common Pleas of Bucks County dated May 16, 2003, in the above-captioned matter, is hereby reversed in part and affirmed in part. The matter is remanded to the trial court for further proceedings consistent with this opinion.

Jurisdiction relinquished.

---

12. The Ordinance contains a standard separability clause which states, in pertinent part, as follows:

If a court of competent jurisdiction declares any provisions of this Ordinance to be invalid or ineffective in whole or in part, the effect of such decision shall be limited to those provisions which are expressly stated in the decision to be invalid or ineffective, and all other provisions of this Ordinance shall continue to be separately and fully effective.

Ordinance, § 1.06A.