# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Villanova University | : | |
| | : | |
| v. | : | No. 157 C.D. 2019 |
| | : | ARGUED: November 14, 2019 |
| Radnor Township Zoning Hearing Board | : | |
| | : | |
| Appeal of: Radnor Township Board of Commissioners | : | |

BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
              HONORABLE ELLEN CEISLER, Judge
              HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**                    **FILED:  April 24, 2020**


This matter arises from Villanova University's (Villanova) plan to install an air-supported seasonal dome to enclose an existing soccer field (Field) on its West Campus in Radnor Township, Delaware County.  The dome would be erected yearly from November 1 to April 1, when weather does not permit outdoor athletic practice. Initially, the Radnor Township Zoning Hearing Board (ZHB) denied both (1) Villanova's appeal of the determination of the Radnor Township Zoning Officer with respect to the ability of Villanova to build the dome by right and (2) Villanova's requested alternative relief of a variance.  The Court of Common Pleas of Delaware County reversed, finding that Villanova could build the dome by right and, alternatively, was entitled to a variance.  Accordingly, the trial court directed the Zoning Officer to issue a building permit.  Before the Court is the appeal by the Radnor Township Board of Commissioners (Township) of the trial court's order.

The facts as found by the ZHB are as follows. Villanova, owner of the subject property, wishes to install the dome during the months specified. The dome would be disassembled and stored off-campus during the rest of the year. The dome is composed of struts, foundation fittings, and an opaque cover. The dome would be 370-feet-long by 219-feet-wide by 65-feet-high. The dome would be illuminated in its interior.

The ZHB further found that universities and colleges require indoor athletic facilities in order to meet the expectations of potential students; that the need for indoor athletic facilities has become more compelling in recent years because many sports have begun training all year round, thus increasing the need for such facilities; that student expectations for indoor athletic facilities have increased significantly in recent years; that the shortage of indoor athletic facilities is straining the function of Villanova's athletic programs during the winter months and is also rendering Villanova less competitive for students; that the proposed dome is "not an unreasonable response to current expectations of students choosing between [Villanova] and other universities and colleges" (ZHB Decision, Finding of Fact "F.F." 13); that the dome would alleviate present strains on Villanova's athletic programs during the winter months of inclement weather; that the dome would exceed by more than 70% the maximum height limit of the Planned Institutional District (PI-District), and exceed by more than 130% the maximum building length provided in the PI-District; that the dome would be erected during the months when many trees have shed their foliage, thus rendering the proposed dome more visible to neighboring residences; and that the interior illumination of the dome would make it visible at night. Numerous residents of surrounding properties opposed the granting of relief requested by Villanova.

Before the ZHB, Villanova advanced arguments to the effect that it was entitled to erect the dome under its proffered interpretation of the Radnor Township,

Pa., Zoning Ordinance (Ordinance), Section 280-69.C (relating to height regulations for the PI-District) (height regulations or Section 280-69.C height regulations) and, in the alternative, that it was entitled to the requested variance from the height regulations.[1] With respect to the Section 280-69.C height regulations, which provide as follows, "[n]o building or structure shall exceed three stories or 38 feet in height." *Id.* Villanova argued that because "or" appears between "three stories" and "38 feet in height," the dome may exceed 38 feet in height, as it is does not exceed three stories. Villanova also argued that the word "height" in the height regulations was ambiguous because the term "building height" is defined in the Ordinance,[2] but there

---

[1] Villanova also sought a variance from Section 280-70 of the Ordinance (relating to special regulations for the PI-District). However, that issue has not been pursued further and the issues have narrowed to arguments regarding height.

[2] "Building height" is defined as follows:

> The vertical distance from the average grade (the average of the grades at twenty-foot intervals around the building perimeter) to the top of the highest roof beams of a flat roof or to the mean level of a sloped roof, provided that chimneys and spires shall not be included in measuring the height. Elevator, stair and equipment penthouses, tanks and air conditioning towers shall not be included. The height shall be measured from finished grade, but such measurement shall not be made from a point higher than eight feet above original grade.

Ordinance, § 280-4 (relating to definitions). The term "building height" and the phrase "structure height" are not used in the chapter of the Ordinance dealing with the PI-District. The term "building height" is used elsewhere in the Ordinance. The phrase "structure height" is used in the context of "*accessory* structure height," which is not a defined term.

The definition of the term "accessory structure" is included in a combined definition with "accessory building."

> Accessory Building or Accessory Structure
>
> A building or structure that is not a principal building or structure and is used for purposes that are entirely incidental and subordinate to those of the principal building or structure located on the same

3

is no defined term "structure height." As the building in question is a "structure," and not a "building," Villanova argued that the word "height"—without a provided definition—is ambiguous and that as the property owner it was entitled to the least restrictive interpretation, which it contended meant that the height in feet would be limited only by the "mean height," seemingly referencing the definition of "building height" as it pertains to sloped roofs. In the alternative, Villanova also argued that it had met the requirements for a dimensional variance.

The ZHB concluded that the interpretation of the Section 280-69.C height regulations proffered by Villanova was "untenable." (ZHB Decision, Conclusion of Law "C.L." 1.) The ZHB stated that the suggested construction would render those provisions nonsensical, and that it was inconceivable that "the authors of the [Ordinance] intended to exempt a structure from the 38[-]foot height requirement on the grounds that it has no stories, or from the building height requirement on the grounds that its roof and walls blend together into a dome." (ZHB Decision at 3.)

With regard to the variance request, the ZHB concluded that Villanova had established a "*measure* of hardship with respect to the subject premises in its lack of adequate weather-protected athletic facilities during the winter" (ZHB Decision, C.L. 2) (emphasis added), but that it had not established that the requested variance represented the minimum relief necessary to alleviate the hardship and that

lot. For the purposes of this chapter, structures such as but not limited to tennis courts, swimming pools, bathhouses, carports, and garages shall be considered as "accessory structures" Setback measurements for swimming pools shall be from the outside edge of the pool foundation wall, coping or deck, whichever is closest to a property line or adjacent buildings, except that a ground level patio may extend from the coping of a swimming pool to the wall of the swimming pool owner's residence.

Ordinance, § 280-4.

the requested variance would not adversely affect the neighboring properties or the surrounding community through their "visual impact" (ZHB Decision, C.L. 3-5).

On appeal by Villanova, the trial court, which did not take additional evidence, reversed. The trial court concluded that the height regulation was ambiguous, entitling Villanova to the least restrictive use of the Property. (Trial Court Op. at 9-17.) The trial court first concluded that the Ordinance is ambiguous because it does not define the term "structure height." The trial court noted that the term "building height" is defined in the Ordinance and suggested that the ZHB "inject[ed] their [sic] own definition of 'structure height' to impose a limit on Villanova's free use of the premises when the applicable ordinance does not contain such a definition." (*Id.* at 13.) The trial court further concluded that because the height restriction uses the word "or" as a disjunctive between "three stories" and "thirty-eight (38) feet," if the proposed structure is only one story, it is unconstrained by the 38-foot height limitation. The trial court noted that "story" is not defined in the Ordinance and that in other parts of the Ordinance, the word "and" is used between foot-height and number-of-stories limitations.

The trial court alternatively found that the ZHB abused its discretion in concluding that Villanova was not entitled to a dimensional variance. (*Id.* at 17-22.) The court noted that the ZHB found that Villanova established a hardship and dismissed arguments to the contrary by the Township. The trial court further concluded that the ZHB had erred in finding that Villanova had failed to show that its requested variance was the minimum relief required and that the aesthetic concerns of neighbors were insufficient to defeat the variance (the trial court referenced the public welfare prong of the requirements for variances).

On appeal[3] to this Court, the Township argues both that the ZHB correctly determined that the dome would violate the Section 280-69.C height regulations and that Villanova is not entitled to a variance because it did not establish a hardship within the meaning of the Pennsylvania Municipalities Planning Code[4] (MPC); because the variance will alter the neighborhood; and because it was not shown that the relief requested was the minimum variance necessary to use the Property.

***Interpretation of the Section 280-69.C Height Regulations***

With regard to the trial court's conclusion that Villanova may build the dome by right, the Township argues that the Section 280-69.C height regulations are not ambiguous and were correctly construed by the ZHB. The Township argues that the definition of "building height" is inapplicable to the matter at hand because that term is not used in Section 280-69.C of the Ordinance and because the proposed dome would be a "structure" and not a "building." The Township argues instead that the Section 280-69.C height regulations should be construed using the dictionary definition of height. The dictionary definition of "height" most relevant for purposes of understanding a restriction on that term is "the distance from the bottom to the top of someone or something standing upright" or "the extent of elevation above a level."[5]

---

[3] Based on the issues raised, our scope of review is limited to determining whether the trial court committed an error of law. Where an appeal presents issues of law, including issues of statutory interpretation, this Court's review is plenary. *1050 Ashbourne Assocs., LLC v. Cheltenham Twp. Bd. of Comm'rs*, 167 A.3d 828, 832 n.6 (Pa. Cmwlth. 2017).

[4] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101 – 11202.

[5] *Height* definition, Merriam-Webster, https://www.merriam-webster.com/dictionary/height (last visited April 23, 2020). *Accord, Height* definition, Macmillan Dictionary, https://www.macmillandictionary.com/us/dictionary/american/height (last visited April 23, 2020)

6

The Township further argues that the Section 280-69.C height regulations are unambiguous in requiring both "height" restrictions—number of stories and linear feet—to be met, rather than one or the other as found by the trial court and urged by Villanova. The Township argues that the reading urged by Villanova and accepted by the trial court is illogical, in that the Township would not adopt a height regulation containing its own loophole. The Township further argues that if it is necessary to achieve the purpose of the Ordinance, i.e., limit the height of structures, it is the duty of the Court to read "or" as "and." *See Appeal of Martin*, 381 A.2d 1321, 1322 (Pa. Cmwlth. 1978) (the duty to ascertain the intention of the legislature often compels courts to construe "and" as meaning "or" and "or" as meaning "and").

With regard to the trial court's concern about the meaning of the word height in the context of the Section 280-69.C height regulations, the Township notes that it was agreed that the dome is a "structure" ("[a]nything constructed or erected on the ground or attached to the ground . . . This term includes any man-made object having an ascertainable stationary location on . . . land . . . .")[6] and is not a "building" ("[a]ny structure having enclosing walls and roof, permanently located on the land . . . ."). *See* Ordinance, § 280-4 (relating to definitions and word usage).

("the degree to which something is high or someone is tall . . . the distance that something is from the ground or from the floor, or from a fixed level such as the sea").

[6] The full definition of "structure" is as follows:

> Anything constructed or erected on the ground or attached to the ground including, but not limited to, buildings, sheds, manufactured homes, and other similar items. This term includes any man-made object having an ascertainable stationary location on or in water whether or not affixed to land.

Ordinance, § 280-4.

7

Villanova's counterarguments reiterate its arguments below and the trial court's reasoning regarding the alleged ambiguity of the Ordinance provision at issue. In support of its position, Villanova references Section 603.1 of the MPC,[7] 53 P.S. § 10603.1, and the Statutory Construction Act of 1972, 1 Pa. C.S. §§ 1501–1991. Section 603.1 of the MPC provides that where doubt exists as to the meaning of language restricting the use of property, it should be interpreted in the property owner's favor.

The primary objective of statutory construction in this context is to determine the intent of the legislative body that enacted the ordinance.[8] 1 Pa.C.S. § 1921(a). Generally, an ordinance's plain language provides the best indication of this legislative intent, and as such, ordinance interpretation begins with examination of the text itself. *See* 1 Pa.C.S. § 1921(b). When reading the plain text of an ordinance, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage." 1 Pa.C.S. § 1903(a). An ordinance must be construed to give effect to all of its provisions so that no provision is mere surplusage. *Tri-Cty. Landfill, Inc. v. Pine Twp. Zoning Hearing Bd.*, 83 A.3d 488, 509 (Pa. Cmwlth. 2014); 1 Pa.C.S. § 1921(a). Where the language of an ordinance is free from all ambiguity, the letter of the ordinance may not be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S. § 1921(b). Thus, if the Court determines the ordinance provision at issue is unambiguous, it must apply it directly as written. *Bowman v. Sunoco, Inc.,* 65 A.3d 901 (Pa. 2013); 1 Pa.C.S. § 1921(b).

---

[7] Section 603.1 of the MPC was added by the Act of December 21, 1988, P.L. 1329.

[8] Although the Statutory Construction Act of 1972 is not by its own terms applicable to the construction of local ordinances, the rules of statutory construction are applicable to statutes and ordinances alike. *See Slice of Life, LLC v. Hamilton Twp. Zoning Hearing Bd.*, 207 A.3d 886, 899 (Pa. 2019); *Trojnacki v. Bd. of Supervisors Solebury Twp.*, 842 A.2d 503, 509 (Pa. 2004).

An ambiguity exists when language is subject to two or more reasonable interpretations and not merely because two conflicting interpretations may be suggested. *Tri-Cty. Landfill, Inc.*, 83 A.3d at 510. Upon careful review of the Section 280-69.C height regulations, we do not find the alternate interpretation proffered by Villanova to be reasonable and so we do not find the term "height" to be ambiguous. The height regulations use the word "shall," which "by definition is mandatory, and . . . is generally applied as such."[9] *Chanceford Aviation Props., L.L.P. v. Chanceford Twp. Bd. of Supervisors*, 923 A.2d 1099, 1104 (Pa. 2007). In light of the mandatory nature of the provision in question, i.e., "no building or structure *shall* exceed . . . ," it strains both language and credulity to suggest that "no building or structure shall exceed three stories or 38 feet in height" means, as suggested by Villanova, that so long as a structure is not divided into "stories" the height allowed is unlimited. Under this construction, a 200-foot-tall grain silo (if such use was permitted) would be allowed because it is a one-story structure. This would be an absurd result, which the drafters of the Ordinance cannot have intended.

Further, while the Ordinance provides a definition for "building height," the Section 280-69.C height regulations do not use that term or refer to that definition.[10] Those regulations apply to structures as well as to buildings. Moreover,

---

[9] While in some cases the courts have held that some contexts leave the meaning of the word "shall" in doubt and subject to being interpreted as directory, in most cases it means that a provision is mandatory. *Chanceford Aviation Props., L.L.P.*, 923 A.2d at 1104. Whether a particular statute is mandatory or directory does not depend upon its form, but upon the intention of the legislative body, to be ascertained from a consideration of the entire act, its nature, its object, and the consequences that would result from construing it one way or the other. *MERSCORP, Inc. v. Delaware Cty. Recorder of Deeds*, 207 A.3d 855, 866 (Pa. 2019).

[10] In examining the Ordinance, a variety of height restrictions are applied in different districts to buildings and structures. Some of these provisions use the term "building height" while others do not, but restrict the height of buildings.

Some, like the height regulations in this case, refer neither to "building height" nor "structure height," but only "height." *See* Ordinance, § 280-64.E (applying to Planned Laboratory-Office

9

the definition of "building height," which explains how a building's height is to be measured, cannot be applied to the dome. Under the Ordinance the height of a building is measured "to the top of the highest *roof beams of a flat roof* or to the *mean level of a sloped roof*," Ordinance § 280-4 (emphasis added). The dome here has no roof as such, and certainly not a "sloped roof," since the exterior shape of the dome is a continuous arc from the ground to its top and back down again. Thus we believe that the term "height" in the Ordinance, as applied to structures, must be interpreted in accordance with the common and ordinary understanding of the word, i.e., the dictionary definition. In sum, we find that the Section 280-69.C height regulations are not ambiguous and that the Ordinance prohibits structures from exceeding 38 feet in height.

### Eligibility for Variance

The ZHB found that Villanova had shown a "measure of hardship" but denied the application based on its findings that Villanova did not meet the fourth and fifth prongs of the variance test. We need not examine the fourth and fifth criteria because the first criteria that must be met is that "an unnecessary hardship will result

PLO District) ("[e]xcept for a mixed use development permitted under [Ordinance] § 280-64[.]G, no building or accessory structure shall exceed three stories or 38 feet in height"). Some limit "building height" and "accessory structure height" separately. *See, e.g.,* Ordinance Art. XIA (Garrett Hill Zoning District). Elsewhere, a provision entitled "building height" limits the height of buildings in terms of feet and stories. *See, e.g.*, Ordinance § 280-53.8.E (relating to height regulations in the Wayne Business Overlay District), *but see* Ordinance § 280-53.17.D (for "special use areas" "[t]he height of any building or structure shall not exceed 55 feet or be less than 30 feet"); *see also* Ordinance § 280.64.G(2) (in PLO District mixed use, "[n]o building shall exceed 85 feet in height" and "[b]uildings in excess of three stories or 38 feet in height are subject to the following requirements" with a table setting forth various "Building Height[s] (tallest building on site)" in a table).

Yet elsewhere, Ordinance Section 280-39.E, a subsection entitled "[b]uilding height" applicable to the Planned Apartment PA District, provides that "[t]he height of any building *or structure* shall not exceed 55 feet or be less than 30 feet" (emphasis added). Ordinance Section 280-86.E, applicable to the Public Land Use PLU District, has a "building height" provision that provides that "[n]o building *or structure* shall exceed three stories or 38 feet" (emphasis added).

10

if the variance is denied, due to the unique physical circumstances or conditions of the property" and "because of such physical circumstances or conditions the property cannot be developed in strict conformity with the provisions of the zoning ordinance and a variance is necessary to enable the reasonable use of the property." *Tri-Cty. Landfill, Inc.,* 83 A.3d at 520. It is well settled that variances are to be sparingly granted, and the reasons for granting them must be substantial, serious and compelling. *In re Boyer*, 960 A.2d 179, 183 (Pa. Cmwlth. 2008).

A dimensional variance involves a request to adjust zoning regulations to use the property in a manner consistent with regulations, whereas a use variance involves a request to use property in a manner that is wholly outside zoning regulations. *Hertzberg v. Zoning Bd. of Adjustment of City of Pittsburgh*, 721 A.2d 43 (Pa. 1998). The same criteria apply to use and dimensional variances. *Id.* However, in *Hertzberg,* our Supreme Court set forth a more relaxed standard for establishing unnecessary hardship for a dimensional variance, as opposed to a use variance. Under *Hertzberg,* courts may consider multiple factors in determining whether an applicant established unnecessary hardship for a dimensional variance. These factors include: "the economic detriment to the applicant if the variance was denied, the financial hardship created by any work necessary to bring the building into strict compliance with the zoning requirements and the characteristics of the surrounding neighborhood." *Id.* at 50.

Although *Hertzberg* eased the requirements for a dimensional variance, it did not remove them. *Tri-Cty. Landfill, Inc.*, 83 A.3d at 520. Where no hardship is shown, or where the asserted hardship amounts to a landowner's mere desire to increase profitability, the unnecessary hardship criterion required to obtain a variance is not satisfied even under the relaxed standard set forth by the Supreme Court in *Hertzberg. Dunn v. Middletown Twp. Zoning Hearing Bd.*, 143 A.3d 494, 506 (Pa. Cmwlth. 2016). Further, a variance, whether labeled dimensional or use, is

appropriate "only where the *property,* not the person, is subject to hardship." *Yeager v. Zoning Hearing Bd. of the City of Allentown*, 779 A.2d 595, 598 (Pa. Cmwlth. 2001) [quoting *Szmigiel v. Kranker,* 298 A.2d 629, 631 (Pa. Cmwlth. 1972) (emphasis in original)].

The detriment shown in this case is that because Villanova lacks sufficient indoor sports practice space, it is hindered in competing for student athletes. It must rent indoor sports practice space off campus during the winter months or, presumably, build a new indoor practice facility which complies with the Ordinance requirements. While these concerns were found by the ZHB to constitute some hardship, it is clear that whatever hardship exists pertains to Villanova as an *institution* and does not arise due to the unique *physical circumstances or conditions of the property*.

Further, although *Hertzberg* sets forth a more relaxed standard for a dimensional variance, it does *not* stand for the proposition that "a variance must be granted from a dimensional requirement that prevents or financially burdens a property owner's ability to employ his property *exactly as he wishes*, so long as the use itself is permitted." *Yeager,* 779 A.2d at 598 (emphasis in original). For instance, in *Great Valley School District v. Zoning Hearing Board of East Whiteland Township*, 863 A.2d 74 (Pa. Cmwlth. 2004), we found that a school district was not entitled to a dimensional variance to erect eighty-five-foot-high light poles on a football field where, without variance, it could continue to use existing thirty-five-foot-high lighting poles that complied with a township ordinance height restriction. *Id.* at 83. The findings in the present case do not establish that the Field is not usable in its current state, without the dome. Indeed, Villanova intends to continue to use the Field without the dome every year from April 2 to October 31 even if it was granted the relief sought. In other words, Villanova has a viable use of its property, just not its preferred use.

12

As an unnecessary hardship, even of the type required for a dimensional variance, has not been shown, we need not address the issues of whether the variance requested is the minimum necessary to provide relief or whether the public interest would be harmed by the grant of the variance.

In light of the foregoing, the order of the trial court is reversed.


_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge


Judge Fizzano Cannon did not participate in the decision of this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Villanova University | : | |
| | : | |
| v. | : | No. 157 C.D. 2019 |
| | : | |
| Radnor Township Zoning Hearing Board | : | |
| | : | |
| | : | |
| Appeal of: Radnor Township Board of Commissioners | : | |

# **O R D E R**

AND NOW, this 24th day of April, 2020, the order of the Court of Common Pleas of Delaware County in the above-captioned case is REVERSED.

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge