David **BECKER** and Gail **Becker**

v.

**ZONING HEARING BOARD OF THE BOROUGH OF SEWICKLEY, Appellant.**

Commonwealth Court of Pennsylvania.

Argued May 2, 2005.
Decided May 20, 2005.

Colin W. Murray, Pittsburgh, for appellant.

John A. Straka, III, Pittsburgh, for appellees, David and Gail Becker. Richard B. Tucker, III, Pittsburgh, for appellee, The Borough of Sewickley.

Before: McGINLEY, Judge, PELLEGRINI, Judge, JIULIANTE, Senior Judge.

OPINION BY Judge PELLEGRINI.

The Zoning Hearing Board of the Borough of Sewickley (Board) appeals two orders of the Court of Common Pleas of Allegheny County (trial court) denying for lack of standing (1) the Board's Motion to Strike Consent Order between David and Gail Becker (the Beckers) and the Borough of Sewickley (Borough) which agreed that the Beckers could build a fence on their property even though the Board had previously denied a variance that all agreed was necessary; and (2) the Board's Motion to Intervene and Strike Evidentiary Hearing.

In August 2002, the Beckers applied for a permit to construct a fence in the front of their property that was located in an R–1 Zoning District. The proposed fence was to be comprised of undulating columnar posts, was to be 70 inches in height in some spots and was to be 52 inches in other spots. The fence was to be an extension of a fence on an adjoining neighbor's property. Because Section 306 of the local zoning ordinance (Ordinance) limited the height of a fence to 4 feet, the Code Enforcement Officer denied the permit.

In September 2002, the Beckers applied for a variance from Section 306 of the

Ordinance, requesting that they be allowed to construct the fence at the proposed height to maintain the aesthetic beauty of the neighborhood, to harmonize their fence with their neighbor's fence, to add uniqueness to their street, and to keep their dog in their yard. At the hearing, Gail Becker testified that the proposed height of the fence was necessary to keep their dog in the yard. The Beckers also presented a letter they sent to the Historical Review Board accompanied by landscape drawings from 1920 and 1956 indicating that the original fences on the property were over 6 feet in height although they had been removed. No objections to the requested variance were raised by anyone present at the hearing.

After hearing, the Board issued a decision denying the variance, reasoning that the Beckers failed to show "unnecessary hardship" justifying a variance from the 4-foot fence requirement. The Board noted that only one property near the Beckers' had a fence exceeding the 4-foot requirement, and there was nothing unique or unusual about the Beckers' property indicating that the 4-foot requirement imposed an unnecessary hardship not shared by other property owners. The Board also noted that although the original fences on the property exceeded 4 feet, those fences were removed and could not be reconstructed. Finally, the Board did not agree with the Beckers that an "unsightly" transition from the neighbors' fence to the proposed fence on the Beckers' property was sufficient to justify a variance.

On appeal to the trial court, the case was remanded to the Board for a *de novo* hearing. The Board never received the trial court's remand order until after the hearing on April 1, 2003. Nevertheless, the Board conducted a *de novo* hearing on April 1, 2003, but the Board advised counsel for the Beckers that it would not officially or formally act on remand without seeing what the trial court actually ordered.[1] The Board suggested that the parties reschedule the hearing, but the Beckers elected to present their case on April 1. The Board limited the Beckers to presenting evidence that was not already presented at the initial hearing. There were no objections to the procedures employed by the Board in this regard.

At the *de novo* hearing, the Beckers presented photographs of several nonconforming fences throughout the neighborhood purporting to show that they were treated unlike others in their neighborhood and to show that others had fences, structures, and foliage (also subject to the 4-foot requirement) exceeding the 4-foot requirement. Other than that, no additional evidence or legal authorities were presented that were not already addressed by the Board at the first hearing. Concluding that the variance request was not *de minimis* and that purely aesthetic reasons could not justify the variance, the Board again denied the Beckers' application by decision dated May 6, 2003.

Around June 4, 2003, the Beckers appealed the Board's decision to the trial court, arguing that the Board's decision should be reversed because (1) the Board denied the Beckers of a *de novo* hearing as ordered by the trial court; (2) the variance requested was *de minimis;* (3) if the Beckers were denied the variance, they would be treated differently than others in the community; (4) the denial of the variance constituted illegal spot zoning; (5) the Board failed to evaluate the reasonableness of the adjustment of the regulations proposed by the Beckers; and (6) the Board refused to afford the Beckers any due process in the conduct of the hearing.

1. The Board eventually received a copy of the trial court's remand order on April 3, 2003.

The appeal was served by mail on the Board and the Borough.

The Board was not made aware of the appeal until December 12, 2003. The Board, through counsel, advised the trial court that the Board had no knowledge of the appeal until December 12, 2003. The Board also requested a status conference to address allegations made by the Beckers regarding the impropriety of the Board's *de novo* rehearing at a November 2003 status conference (unattended by the Board) which prompted the trial court to hold an evidentiary hearing at the Borough's expense.

On December 17, 2003, after a status conference was held by the trial court involving only the Beckers and the Borough (not the Board), the Borough and the Beckers reached a settlement regarding their appeal from the second order of the Board denying the variance. The terms of the proposed settlement included an agreement that the Borough would not seek to enforce the height restriction with regard to the proposed fence so long as the fence was constructed in strict conformity with the design drawing submitted by the Beckers. The parties prepared a "Consent Order" for the trial court to accept.

After learning of the proposed settlement, the Board filed a(1) Petition to Intervene and (2) Petition to Strike Consent Order and Evidentiary Hearing, attaching the transcript from the *de novo* hearing to address the allegation that such a hearing was never conducted and arguing that it could not be charged with violating the trial court's order without knowing the substance of that order until after the hearing.

In response to the Petitions, the trial court cancelled the scheduled evidentiary hearing and instead scheduled a status conference. All parties appeared at the January 21, 2004, status conference and presented argument in favor of and against the proposed settlement of the Beckers' appeal. After argument, the trial court orally advised counsel for the parties that the Consent Order would not be approved; rather, the trial court stated that it intended to proceed with the matter as though it was a regular appeal. The trial court ordered the record to be filed, and the Board was left with the impression that once it was determined that more or no additional evidence was necessary for the trial court to receive, that court would issue a briefing schedule in order to decide the appeal on the merits.

Roughly one year later, however, the Board received the Consent Order prepared by the Borough and the Beckers and signed by the trial court, and it also received orders denying the Board's Petition to Intervene and Petition to Strike Consent Order and Evidentiary Hearing. Thereafter, the record was filed with the trial court, which included transcripts of the evidentiary hearings before the Board.

By letter dated December 28, 2004, the Board requested reconsideration of the Consent Order and the orders denying the intervention and the petition to strike. With no response to the letter forthcoming from the trial court, the Board filed Motions for Reconsideration and simultaneously appealed the trial court's orders to this Court on January 19, 2005.

Initially, this Court dismissed the Board's appeals because it lacked standing. On February 23, 2005, however, we granted reconsideration of that order. After filing a statement of matters complained of with the trial court, that court issued an opinion denying the Board's appeals, reasoning that the Board lacks standing to appeal orders of the courts of common pleas because, as a quasi-judicial agency,

the Board lacks a direct interest in the subject matter of a zoning dispute. This appeal followed.

■ Ordinarily, a local zoning hearing board cannot appeal a reversal of its decisions on the merits by the courts of common pleas. *Lansdowne Borough Board of Adjustment Appeal*, 313 Pa. 523, 170 A. 867 (1934). However, when a zoning board is appealing a decision that adversely affects its legislatively conferred functions, duties, and responsibilities as opposed to appealing an order that merely reverses its decision as a neutral third-party tribunal, a zoning board can bring the appeal. *Pennsylvania Game Commission v. Department of Environmental Resources*, 521 Pa. 121, 555 A.2d 812 (1989).[2] In this case, because the Board is not seeking to appeal a reversal of its decision as a tribunal, but instead is appealing an order that allegedly infringes upon its exclusive jurisdiction to decide whether or

not applicants are entitled to variance relief under the local ordinance and the Pennsylvania Municipalities Planning Code (MPC),[3] *Lansdowne* is inapplicable, and the appeal is properly before us.

■ As to the parties' contentions, although they suggest that the outcome of this case hinges on whether the Board has standing in the traditional sense to appeal the orders issued by the trial court, the real issue in this case is whether or not the Board was entitled to participate in the settlement of the appeal as a party. First, the Board is charged with the exclusive jurisdiction to (1) interpret zoning ordinances, (2) grant special exceptions to applicants seeking relief from the provisions of the zoning ordinance, and (3) decide whether applicants are entitled to variance relief from local zoning ordinances under Section 909.1 of the Pennsylvania Municipalities Planning Code (MPC).[4] The

---

**2.** In that case, our Supreme Court stated as follows:

> The terms "substantial interest", "aggrieved" and "adversely affected" are the general, usual guides in that regard, but they are not the only ones. For example, *when the legislature statutorily invests an agency with certain functions, duties and responsibilities, the agency has a legislatively conferred interest in such matters.* From this it must follow that, unless the legislature has provided otherwise, such an agency has an implicit power to be a litigant in matters touching upon its concerns. In such circumstances the legislature has implicitly ordained that such an agency is a proper party litigant, *i.e.*, that it has "standing."

*Id.* at 128, 555 A.2d at 815. *See also In re T.J.*, 559 Pa. 118, 739 A.2d 478 (1999).

**3.** Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101–11202.

**4.** Specifically, that section provides as follows:

> (a) The zoning hearing board shall have exclusive jurisdiction to hear and render final adjudications in the following matters:

> (1) Substantive challenges to the validity of any land use ordinance, except those brought before the governing body pursuant to sections 609.1 and 916.1(a)(2).

> (2) Challenges to the validity of a land use ordinance raising procedural questions or alleged defects in the process of enactment or adoption which challenges shall be raised by an appeal taken within 30 days after the effective date of said ordinance. Where the ordinance appealed from is the initial zoning ordinance of the municipality and a zoning hearing board has not been previously established, the appeal raising procedural questions shall be taken directly to court.

> (3) Appeals from the determination of the zoning officer, including, but not limited to, the granting or denial of any permit, or failure to act on the application therefor, the issuance of any cease and desist order or the registration or refusal to register any nonconforming use, structure or lot.

> (4) Appeals from a determination by a municipal engineer or the zoning officer with reference to the administration of any flood plain or flood hazard ordinance or such provisions within a land use ordinance.

Board's interpretation of the Ordinance and its determinations regarding any applications for variances or special exceptions are binding on everyone in the municipality, including the governing body (in this case, the Borough), unless those determinations are subsequently reversed on appeal to the courts of common pleas. Where a local zoning hearing board renders a decision, the local zoning board is a party to the proceedings on appeal to the court of common pleas, regardless of whether the zoning board can appeal the reversal of its decision to this Court.

■ Second, although a municipality has the ability to settle zoning disputes that are within the exclusive jurisdiction of the municipality, *see* 53 P.S. § 10901.1(b) (jurisdiction of governing bodies); *see also Summit Township Taxpayers Association v. Summit Township Board of Supervisors*, 49 Pa.Cmwlth. 459, 411 A.2d 1263 (1980); *Al Monzo Construction Company v. Monroeville Borough*, 5 Pa.Cmwlth. 97, 289 A.2d 496 (1972), a municipality cannot settle disputes that fall within the exclusive jurisdiction of the local zoning hearing board. *Lang v. Township of North Fayette*, 63 Pa.Cmwlth. 268, 437 A.2d 1282 (1981). If that were so, municipalities could supplant every decision of a zoning board by stipulation and nullify Section 901.1(a) of the MPC altogether.

Finally, the Ordinance passed by the Borough in this case expressly provides

that the Board, not the Borough, has the exclusive jurisdiction to "authorize upon appeal in specific cases such variance from the provisions of this Ordinance as will not be contrary to the public interest[.]" Section 606 of the Ordinance. (Reproduced Record at 388a.) Section 604 of the Ordinance further provides that "[u]nder no circumstances shall the duties of the Borough Council include hearing and deciding questions of enforcement that may rise." (Reproduced Record at 385a.)

With these principles in mind, the Board as a party to the proceedings had standing to participate in Beckers' appeal. Attempting to settle the Beckers' appeal without the participation of the Board vitiated the Board's authority under the MPC as the local agency charged with exclusive jurisdiction over applications for relief from the provisions of a local ordinance within its municipal borders. Forgetting for the moment that the Borough invaded the exclusive jurisdiction of the Board in derogation of Section 901.1(a) of the MPC, the Borough effectively "reversed" the decision of the Board, thereby denying the Beckers' application for a variance when only the trial court had the ability to make that determination on appeal either after receiving additional evidence (i.e., *de novo*) or after deciding the merits based on the record before the Board.

In light of the foregoing, the Consent Order issued by the trial court is vacated

(5) Applications for variances from the terms of the zoning ordinance and flood hazard ordinance or such provisions within a land use ordinance, pursuant to section 910.2.

(6) Applications for special exceptions under the zoning ordinance or flood plain or flood hazard ordinance or such provisions within a land use ordinance, pursuant to section 912.1.

(7) Appeals from the determination of any officer or agency charged with the administration of any transfers of develop-

ment rights or performance density provisions of the zoning ordinance.

(8) Appeals from the zoning officer's determination under section 916.2.

(9) Appeals from the determination of the zoning officer or municipal engineer in the administration of any land use ordinance or provision thereof with reference to sedimentation and erosion control and storm water management insofar as the same relate to development not involving Article V or VII applications.

53 P.S. § 10909.1(a)(1)-(9).

because the Board was precluded from participating and approving the purported settlement between the Beckers and the Borough, and the matter is remanded to the trial court to entertain the Beckers' appeal with full participation of the Board.

## ORDER

AND NOW, this 20th day of May, 2005, the order of the trial court in the above-captioned matter is vacated and the matter remanded for proceedings consistent with this opinion.

Jurisdiction relinquished.