In re: Appeal of MAIBACH, LLC from the Decision of the Board of Supervisors of Rapho Township.

Appeal of: Rapho Township.

Commonwealth Court of Pennsylvania.

Argued June 9, 2011.

Decided July 26, 2011.

Matthew J. Creme, Jr., Lancaster, for appellant.

Josele Cleary, Lancaster, for appellee Fire Department of Mount Joy.

J. Dwight Yoder, Lancaster, for appellee Maibach, LLC.

BEFORE: PELLEGRINI, Judge, and COHN JUBELIRER, Judge, and FEUDALE, Senior Judge.

OPINION BY Senior Judge FEUDALE.

Rapho Township (Township) appeals the October 5, 2010 order of the Court of Common Pleas of Lancaster County (trial court) sustaining Maibach, LLC's (Applicant) appeal of a decision of the Rapho Township Board of Commissioners (Board). The Board granted Applicant's conditional use application, subject to 98 conditions, to operate an ethanol production facility in the Township. The trial court determined that Condition 66, below, constituted an impermissible impact fee under the Pennsylvania Municipalities Planning Code (MPC).[1] On appeal, the Township alleges that the Condition was not an impact fee but a valid exercise of the Board's discretion. The Township further contends the trial court should have imposed a similar condition to which Applicant agreed during negotiations, taken additional evidence, or remanded the matter to the Board for additional evidence. We affirm.

Applicant owns 34 acres of land in the Township located at the intersection of Maibach Lane and Route 230; the property is zoned industrial. Applicant currently operates a propane gas storage/distribution facility on the property. In 2009, Applicant filed a conditional use application seeking approval to construct an "agri-energy center" on its property. The "agri-energy center" would process energy beets into ethanol gas and the residual waste into electricity and fertilizer. Given its location, the Borough of Mount Joy Fire Department (Fire Department) is the first responder to emergency calls for the property.

The Board held hearings on the application in June and July 2009. During this time, Applicant, the Township, and the Fire Department negotiated a number of conditions to be imposed if the Board granted Applicant's application. Later, Applicant and the Township negotiated a more comprehensive list of conditions, which the parties agreed Applicant would submit to the Board. The relevant condition to this appeal provided (with emphasis added):

> Applicant shall, in recognition of the on-going cost to provide emergency response services, *pay one-quarter cent ($0.0025) for each gallon of ethanol* produced at the facility to an *emergency response fund to be created by the Township* beginning on the date 36 months after the Township issues the first occupancy certificate. The Township shall not use less than 75% of the emergency response fund for the purchase of equipment or required training for [the Fire Department] or, if the Township establishes a police department, contracts for police services, and/or becomes part of a regional police department, the Township may not use more than 23% of such a fund to defray the costs of police protection services and equipment relating to the Property and shall provide 2% to the Township Emergency Management Agency. Applicant shall make payment of the con-

1. Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101–11202.

tribution to the Township on a quarterly basis, on or before the 20th day of January, April, July, and October for the prior calendar quarter. If the Township imposes a real estate tax in the future, the amount of the contribution required by this Condition shall be decreased by the amount which Applicant pays to the Township in real estate taxes. (Trial Ct. Op., 10/5/10, at 9).

Applicant submitted the agreed-upon conditions to the Board, which granted Applicant's conditional use application. The Board did not impose the above condition which the parties negotiated. It imposed Condition 66 as follows:

Applicant shall, in recognition of the ongoing cost to provide emergency response services *and to address other issues impacting the general public infrastructures of the Township from the project, pay one-half cent ($0.0050) for each gallon of ethanol produced* at the facility to the Township beginning on the date 48 months after the Township issues the first occupancy certificate. The funds shall be administered by the Township. Applicant shall file a quarter-annu[a]l report with the Township identifying the number of gallons of ethanol produced at the facility and the total amount of ethanol shipped from the facility and make payments of the contribution on a quarterly basis on or before the 30th day of January, April, July, and October for the prior calendar quarter. The quarter-annual report shall also be filed on the same dates. If the Township imposes a real estate tax in the future, the amount paid in real estate taxes for the Agri–Energy Center shall be reduced from the payments out of the one-half cent ($0.0050) per gallon charge. (Emphasis added). (*Id.* at 2).

Thus, the parties' negotiated condition and the Board-imposed condition differ in that the Board 1) increased the price per gallon from a quarter cent to a half cent, 2) evidenced an intent to use the funds for expenses other than those associated within on-going emergency response services, 3) deleted the requirement that the Township use at least 75% of the funds for the purchase of emergency response equipment and/or training, 4) deleted the restriction that not more than 23% of the funds be used to defray the costs of police protection services in the event the Township establishes its own police department or becomes part of a regional force, and 5) deleted the requirement that 2% of the funds be provided for the Township's Emergency Management Agency.

Applicant appealed Condition 66 to the trial court seeking an order striking the Condition or modifying it on the basis that the MPC prohibits impact fees unless the governing body has passed an ordinance permitting such fees. Applicant further maintained the record did not support the Board's imposition of a half-cent per gallon fee. The Township and the Fire Department intervened.

The trial court sustained Applicant's appeal and struck Condition 66 as an impact fee. It rejected the Township's and Fire Department's assertion that the Condition was an exercise of the Board's power to impose reasonable conditions upon approval of conditional use applications. The court noted that the Condition was to be placed in the Township's general fund and was not for site-specific improvements. The latter observation further convinced the trial court to deny the Township's request to impose the parties' negotiated condition.

On appeal,[2] the Township first contends Condition 66 is a reasonable condition

2. Where, as here, a trial court does not take additional evidence in a zoning case, we are

which the Board had authority to impose and which is not an impact fee. In support, the Township maintains that Applicant's evidence before the Board showed that the potential for catastrophe is great; thus, there are issues related to fire prevention and suppression, explosion prevention, dust monitoring, combustible gases and traffic. There is a need for emergency equipment and the training of emergency personnel. According to the Township, the negotiated condition addressed all these concerns, and for this reason neither the Township nor the Fire Department presented evidence on these issues. The record here, Township maintains, supports the conclusion the Board imposed Condition 66 to address safety and emergency issues related to the proposed site. Township also contends Applicant failed to present evidence of how the Condition requires payment for offsite improvements, capital expenditures, off-site transportation, or road improvements.

 We first set forth the law relevant to conditional uses and impact fees. It is well settled that municipalities of the Commonwealth possess only those powers expressly granted to them by the General Assembly. *Hydropress Evnt'l Servs. v. Twp. of Upper Mount Bethel, County of Northampton*, 575 Pa. 479, 836 A.2d 912 (2003). Applicable here, Section 909.1(b)(3) of the MPC [3] grants a municipality's governing body authority to render final adjudications on applications for conditional uses. An applicant seeking a conditional use must show compliance with the express standards of the zoning ordinance that relate to the specific conditional use. *In re Thompson*, 896 A.2d 659 (Pa.

Cmwlth.2006). A conditional use is one to which the applicant is entitled provided that the specific standards of the zoning ordinance are met. *Id.* If the applicant demonstrates compliance with the zoning ordinance, the governing body must grant the application unless objectors introduce sufficient evidence that the proposed use has a detrimental effect on the public health, safety, and welfare. *Id.*

 A governing body may, however, impose reasonable conditions on the grant of a conditional use. Section 913.2 of the MPC; [4] *Levin v. Bd. of Supervisors of Benner Twp., Centre County*, 669 A.2d 1063 (Pa.Cmwlth.1995). A board is permitted to impose conditions on the use of a property to mitigate any potential adverse impacts from the proposed use, and is required to reduce the negative impacts to an acceptable level if it can, by imposing conditions. *Edgmont Twp. v. Springton Lake Montessori Sch., Inc.*, 154 Pa. Cmwlth. 76, 622 A.2d 418 (1993). Reasonable conditions are those that advance a valid zoning interest, are supported by the record, and *relate to the specific zoning ordinance at issue. HHI Trucking & Supply, Inc. v. Borough Council of Borough of Oakmont*, 990 A.2d 152 (Pa. Cmwlth.2010).

 Article V–A of the MPC governs impact fees. The legislature enacted Article V–A to "insure that the cost of needed capital improvements be applied to new developments in a manner that will allocate equitably the cost of those improvements among property owners and to respond to the increasing difficulty which municipalities are experiencing in developing revenue sources to fund new capital

---

limited to determining whether the governing body committed an error of law or manifestly abused its discretion. *HHI Trucking & Supply, Inc. v. Borough Council of Borough of Oakmont*, 990 A.2d 152 (Pa.Cmwlth.2010).

3. Added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10909.1(b)(3).

4. Added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10913.2.

infrastructure from the public sector." Section 501–A of the MPC.[5] "Impact fees" are charges or fees "imposed by a municipality against new development in order to generate revenue for funding the costs of transportation capital improvements necessitated by and attributable to new development." Section 502–A of the MPC.[6] "Transportation capital improvements" are "those offsite road improvements that have a life expectancy of three or more years, not including costs for maintenance, operation or repair." *Id.*

The MPC sets forth a specific framework for adoption of an impact fee. Section 503–A relevantly provides, with added emphasis:

(a) The governing body of each municipality other than a county, in accordance with the conditions and procedures set forth in this act, may enact, amend and repeal impact fee ordinances and, thereafter, may establish, at the time of municipal approval of any new development or subdivision, the amount of an impact fee for any of the offsite public transportation capital improvements authorized by this act as a condition precedent to final plat approval under the municipality's subdivision and land development ordinance. Every ordinance adopted pursuant to this act shall include, but not be limited to, provisions for the following:

(1) The conditions and standards for the determination and imposition of impact fees consistent with the provisions of this act.

(2) The agency, body or office within the municipality which shall administer the collection, disbursement and accounting of impact fees.

(3) The time, method and procedure for the payment of impact fees.

(4) The procedure for issuance of any credit against or reimbursement of impact fees which an applicant may be entitled to receive consistent with the provisions of this act.

(5) Exemptions or credits which the municipality may choose to adopt.

. . .

(b) *No municipality shall have the power to require as a condition for approval of a land development or subdivision application the construction, dedication or payment of any offsite improvements or capital expenditures of any nature whatsoever or impose any contribution in lieu thereof,* extraction fee, or any connection, tapping or similar fee except as may be specifically authorized under this act.

(c) No municipality may levy an impact fee prior to the enactment of a municipal impact fee ordinance adopted in accordance with the procedures set forth in this act, except as may be specifically authorized by the provisions of this act. A transportation impact fee shall be imposed by a municipality within a service area or areas only where such fees have been determined and imposed pursuant to the standards, provisions and procedures set forth herein.

Here, we agree with the trial court that Condition 66 is an impermissible fee imposed on Applicant in violation of the MPC.

In resolving this dispute, we are guided by our decision in *Trojnacki v. Board of Supervisors of Solebury Township,* 842 A.2d 503 (Pa.Cmwlth.2004). There, a developer sought final land subdivision approval from the Solebury Township board of supervisors. The township had an ordinance requiring a landowner to plant replacement trees off-site in some circum-

---

**5.** Added by the Act of December 19, 1990, P.L. 1343, 53 P.S. § 10501–A.

**6.** Added by the Act of December 19, 1990, P.L. 1343, 53 P.S. § 10502–A.

stances. The developer estimated that his improvements would require the removal of 76 trees from his property and that he would be required under the ordinance to plant 366 replacement trees, only 25 of which could be planted on-site. The developer offered to discuss a contribution in lieu of tree replacement, but the board of supervisors rejected his final subdivision plan without addressing developer's alternative proposal.

The developer filed two actions in the court of common pleas. He appealed the board of supervisors' letter denying approval of his final subdivision plan and filed a mandamus action/motion for peremptory judgment. After consolidating the two actions, the common pleas court affirmed. The developer appealed to this Court, which reversed in part and affirmed in part.

Relevant to this appeal, we agreed with the developer that the tree replacement ordinance violated Section 503–A(b) of the MPC. That section provides in "broad terms that '[n]o municipality shall have the power to require as a condition for approval of a land development or subdivision application the construction, dedication or *payment of any* offsite improvements or *capital expenditures of any nature whatsoever or impose any contribution in lieu thereof.'*" *Trojnacki*, 842 A.2d at 509 (emphasis added). We concluded that the legislature's use of the phrase "of any nature whatsoever" showed the broad scope of Section 503–A(b)'s prohibition; thus, the clear implication of Section 503–A permits a municipality to condition land use approval on on-site improvements or even fees in lieu thereof, but does not permit

such practices with regard to off-site improvements. *Id.*

Although *Trojnacki* involved subdivision approval and a duly-adopted ordinance, we find it applicable to this case. Here, Condition 66 clearly imposes a "contribution in lieu of" capital expenditures and, therefore, violates Section 503–A(b) of the MPC. *See Trojnacki*, 842 A.2d at 510 n. 10 (noting that developer's offer to pay a fee in lieu of off-site tree replacement also ran afoul of Section 503–A(b)).

Our conclusion is supported by the Board's consideration of Condition 66 at its August 20, 2009 hearing. A Board member proposed to increase the fee from a quarter cent to a half cent based on his knowledge of two other businesses that pay similar fees. The member further opined that the fund be used "for the good of the [T]ownship" since the Township does not impose real estate taxes and the local school district has one of the lowest tax rates in the county. Notes of Testimony (N.T.), 8/20/09, at 9; *see also id.* at 11 ("the key is we have some language that it goes for the good of the whole of the [T]ownship"; "I think you need some language in there so ... the board of supervisors just aren't ... doing something not for the good of the [T]ownship"). The remaining Board members agreed with the proposal to offset the fee against any real estate taxes the Township may later impose.[7] It is evident from the Board's discussions that the Board intended for the fees generated from Condition 66 to be used for Township improvement and did not want to limit future Boards from using the fees as they deemed appropriate. *See generally N.T.,* 8/20/09.

---

7. In conjunction with Condition 66, the Board discussed Condition 67, which requires Applicant to make a $75,000 contribution to the Township within thirty-six months of issuance of the first occupancy permit. The "contribution" is in "recognition of the poten-

tial adverse impacts of the proposed project on the general infrastructure of the Township." R.R. 36a. The Board considered either decreasing the contribution in Condition 67 or eliminating it altogether but ultimately did not amend it. Applicant did not chal-

■ In view of *Trojnacki,* Condition 66's explicit language and the Board's discussions pertaining thereto, we agree that Condition 66 violates the MPC because it requires a contribution in lieu of capital expenditures. 53 P.S. § 10503–A(b). The trial court therefore properly struck the Condition from the Board's conditional use approval.[8]

Finally, we discern no error in the trial court's decision not to impose the agreed-upon condition, take additional evidence, or remand the matter to the Board for additional evidence on the Township's and the Fire Department's safety concerns related to use of the property as an ethanol production facility.

Notwithstanding arguments to the contrary, the Board rejected the condition as submitted. While we certainly understand the Township's frustration that Applicant agreed to a condition which the Board changed and is now unenforceable, the parties negotiated the condition subject to the Board's approval. The Board, as governing body, was not bound by that agreement. *See Becker v. Zoning Hearing Bd.*

*of the Borough of Sewickley,* 874 A.2d 1270, 1275 (Pa.Cmwlth.2005) ("although a municipality has the ability to settle zoning disputes that are within the exclusive jurisdiction of the municipality ..., [it] cannot settle disputes that fall within the exclusive jurisdiction of the local zoning hearing board"); 53 P.S. § 10909.1(b)(3).

Furthermore, the Township fails to identify with any particularity the safety and health concerns not adequately addressed by the Board's remaining conditions. In addition to the conditions noted below, the conditions also require implementation of a fire protection plan, installation of all equipment in the fire protection plan and training of emergency personnel at Applicant's sole expense; submission of material safety data sheets and updates to the Fire Department; submission of a master site plan identifying the location of buildings, tanks, piping systems, storage areas, hydrants, foam equipment, access roads and materials and volumes stored; the numbering of buildings, structures, the piping system and hydrants; an emergency action plan expanding on the fire protection plan which contains the identification and various information relating to each stor-

---

lenge Condition 67 even though it violates the MPC as well. *See Trojnacki,* 842 A.2d at 510, n. 10 (noting the developer's offer of a contribution in lieu of replanting trees likewise ran afoul of the MPC because Section 503–A(b) expressly prohibits a municipality from imposing any contribution in lieu of off-site improvements).

8. If we agreed Condition 66 does not violate the MPC, we would nevertheless conclude the record does not support imposition of the Condition. A governing body abuses its discretion when it imposes a condition that the record does not support. *HHI Trucking & Supply Inc.* As noted above, a Board member first proposed increasing the fee to one half cent based on his knowledge that two other businesses pay fees to a local municipality and to Lancaster County. Specifically, the Board member recited that one business pays Lancaster County a fee for use of an incinera-

tor and another business pays another township a fee for producing corn ethanol (which the member estimated produces more than double the amount of ethanol than the proposed facility would). N.T. 8/20/09, at 6–7. There is no record support for the Board's imposition of a one-half cent fee, nor is there any evidence of how the Board calculated the fee. It was based on one Board member's general knowledge of other fees paid by other entities to other governing bodies which may have adopted impact fee ordinances pursuant to the MPC. In addition, the Board provided no end date for payment of the fee, and we cannot conclude that a perpetual $200,000 per year fee to the Township is reasonable. An indefinite collection of the fee under Condition 66 would subsidize further development without regard to its impact on the Township's resources and infrastructure.

age tank, piping system, hydrants and personnel emergency contact information; installation of fire and gas detection and fire suppression systems in all buildings; fixed foam fire suppression systems; placards on buildings, tanks and piping systems; fire detection and fire suppression system in tanks; exposure protection systems; contracts with fire fighting companies specializing in similar products; and dry hydrants.[9]

The remaining conditions, which the parties negotiated and the Board did not alter, represent those areas of concern raised by the parties and their agreement on how to ameliorate them. The Township and the Fire Department fail to identify other areas of concern not addressed by the remaining conditions. The Township also fails to identify what type of evidence

it would produce on remand that is unrelated to the other 97 conditions imposed.[10] The Township focuses on the need for funds to provide emergency equipment and training, but this argument fails to acknowledge that any conditional use approval requiring contributions in lieu of capital expenditures violates Section 503–A(b). Therefore, we agree a remand is not warranted.

Accordingly, we affirm.

## *ORDER*

NOW, this 26th day of July, 2011, the order of the Court of Common Pleas of Lancaster County is affirmed.

9. Other conditions relate to compliance with all Federal and state laws and requisite permits (approximately 23); the number of storage tanks; Applicant's responsibilities upon ceasing operations; annual reports; adequate lighting; access drives; fencing; landscaping; dumpsters; payment of traffic impact fees pursuant to the "Triangle Agreement"; use of products other than energy beets; storage of ethanol on site; letters of credit; vehicle queues on the property; the property's ability to handle truck traffic; traffic improvements on and off-site; improvements to the intersection of Maibach Lane and Route 230 and the adjoining access areas; a design for the fuel loading facility and access to it; a deceleration lane warrant analysis; an analysis of subsurface conditions; an analysis of subsurface exploration and schedules for completing the exploration; a geotechnical engineering study; a rock removal plan; approval of foundation design plans; professional engineering services for observation of all site-activities; operation of vehicles on the property generally; access keys for the buildings; information regarding confined spaces; roof access points; utility room and roof access door markings; a looped water system; prevention of overspills; private water systems; improvements to the neighboring borough's water system; required easements; outside storage on the property; operation of an anaerobic di-

gester; removal of waste; discharge into public sewers; fertilizer distribution; discharge into nearby creeks; wetlands reports; records regarding the release of chemicals; off-site disposal of products; and reimbursement of Township fees. The Board also imposed conditions addressing the elimination or removal of odors and compliance with traffic studies.

10. The Fire Department states in its brief that it would present evidence concerning the cost of equipment to be maintained and replaced during the life of the agri-energy facility and the number of persons and skills necessary to respond to emergencies at the plant. We note, however, that Condition 40 requires Applicant to submit a fire protection plan, and to, at its sole expense, install all equipment in the protection plan, conduct all training described in the plan, and provide any additional equipment and training that may be required by applicable codes, ordinances and regulations. Conditions 41–51 place additional responsibilities on Applicant related to fire prevention and safety. Thus, in addition to the $150,000 contribution Applicant is required to make to the Fire Department pursuant to Condition 65, Applicant has an ongoing responsibility to provide the proper fire fighting equipment and training to deal with emergencies at its facility.