IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Horizon House, Inc. | : | |
| | : | |
| v. | : | No. 1027 C.D. 2020 |
| | : | |
| East Norriton Township Zoning Hearing Board and East Norriton Township | : | |
| | : | |
| | : | |
| | : | |
| Appeal of: East Norriton Township Zoning Hearing Board | : | |
| | : | |
| | | |
| Horizon House, Inc. | : | |
| | : | |
| v. | : | No. 1048 C.D. 2020 |
| | : | |
| East Norriton Township Zoning Hearing Board and East Norriton Township | : | |
| | : | |
| | : | |
| | : | |
| Appeal of: East Norriton Township | : | SUBMITTED: June 7, 2021 |

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                                          FILED: July 8, 2021

In these consolidated appeals, Appellants East Norriton Township Zoning Hearing Board (Zoning Board) and East Norriton Township (Township) separately appeal the Court of Common Pleas of Montgomery County's (Trial Court) September 16, 2020 order. In that Order, the Trial Court granted in part and denied in part Appellee Horizon House, Inc.'s statutory appeal of the Zoning Board's November 20, 2019 decision regarding a property located at 2921 Stony Creek Road in East Norriton, Pennsylvania (Property). In addition, Horizon House has filed a

motion to quash, through which it asks us to quash both of these appeals due to Appellants' purported lack of standing. After thorough review, we grant Horizon House's Motion to Quash in part and deny it in part. In doing so, the Township's appeal is quashed in full since the Township failed to properly intervene before the Trial Court. The Zoning Board's appeal is quashed in part due to its inability to challenge the merits of the Trial Court's September 16, 2020 order. In addition, we reverse the Trial Court's September 16, 2020 order in part, with regard to the Trial Court's directive that the Zoning Board issue a use and occupancy permit to Horizon House, but otherwise affirm the Trial Court's order.

## I. Facts and Procedural History

On December 4, 2018, Horizon House submitted a use and occupancy permit application (Application) to the Township, which pertained to a dwelling located on the Property. Board's Decision, History; Trial Court Record (T.C.R.) at 456. Through this Application, Horizon House proposed to use the dwelling as a home for two specific disabled individuals, who had "serious mental and physical handicaps," with room for up to one additional, disabled individual in the future. Zoning Board's Decision, Findings of Fact (F.F.), ¶5.[1] On December 14, 2018, the Township's solicitor informed Horizon House that the Application had been denied, due to conflicting information regarding whether Horizon House intended to use the dwelling as a group home. T.C.R. at 456-57. The solicitor explained that a group home could only be authorized by special exception for the Property, due to the fact that it is zoned BR-1 residential. *Id.* On July 12, 2019, Horizon House filed a

[1] Horizon House "is [a] non-profit organization that offers a broad range of housing options for adults with intellectual and developmental disabilities. In Montgomery County, these options include Community Residential Living for individuals with in-home support, as well as Forensic Services for adult males with maladaptive psycho-sexual behaviors." Zoning Board's Decision, F.F. ¶2.

substantially similar use and occupancy permit application (Second Application), which was denied for the same reasons on July 17, 2019. *Id.* at 419.

Horizon House appealed the denial of its Second Application to the Zoning Board on August 16, 2019. *Id.* at 417. Through this appeal, Horizon House pursued two avenues of relief. First, it asked the Zoning Board to find that Horizon House intended to use the Property's dwelling as a single-family home, a by-right use, in line with the definition of "family" contained in the Township's Zoning Ordinance,[2] rather than as a group home. Second, in the alternative, Horizon House requested that the Zoning Board authorize it to operate a group home on the Property, albeit by granting a "reasonable accommodation" excusing compliance with the Zoning Ordinance's special exception requirements. Zoning Board's Decision, F.F., ¶4.

The Zoning Board held a public hearing regarding Horizon House's appeal on October 10, 2019. The Township participated in this hearing by presenting witness testimony and other evidence, as well as by cross-examining a witness offered by Horizon House. *Id.*, ¶¶7-9, 21, 40-46, 50-69. In addition, the Zoning Board granted the Township party status. *Id.*, ¶7. On November 20, 2019, the Zoning Board denied Horizon House's appeal in full, reasoning that the Property's prospective residents would not qualify as a "family" under the Zoning Ordinance, and that the Zoning Board did not have legal authority to grant Horizon House's desired "reasonable accommodation." *Id.*, Discussion; *id.*, Conclusions of Law, ¶¶3-7.

Horizon House appealed the Zoning Board's decision to the Trial Court on December 19, 2019. On June 30, 2020, an attorney entered his appearance, indicating he represented the Township in this matter; however, at no point during the pendency of Horizon House's Trial Court appeal did the Township declare,

---

[2] East Norriton Township Zoning Ordinance, Montgomery County, Pa., *as amended* (2008).

3

request, or receive intervenor status.[3] On July 15, 2020, the Zoning Board filed a petition with the Trial Court, requesting permission to submit additional evidence that was revealed in June 2020 through a related federal court action. According to the Zoning Board, this evidence would show that Horizon House had misled the Zoning Board regarding how Horizon House planned to use the Property. T.C.R. at 511-13.[4] The Trial Court denied the Zoning Board's petition on September 2, 2020. The Trial Court then held oral argument on September 16, 2020, and issued an order that same day, through which it affirmed the Zoning Board's decision in part and reversed the decision in part. Trial Ct. Order, 9/16/20, at 1. In doing so, the Trial Court affirmed the denial of Horizon House's request for a special exception, but reversed the determination that Horizon House did not intend to use the Property's dwelling as a single-family home. *Id.* Additionally, the Trial Court directed the Zoning Board to issue a use and occupancy permit to Horizon House for the Property. *Id.*

These appeals followed.[5]

_____

[3] The Township did, however, submit a brief to the Trial Court and subsequently participated in oral argument.

[4] According to the Zoning Board, Horizon House had admitted through supplemental discovery in a related federal action that the individuals originally slated to live at the Property had withdrawn their interest, that no other individuals were currently willing to take their places, and that it had originally intended to use the Property for forensic services, rather than as a group or single-family home. T.C.R. at 511-12.

[5] The Trial Court subsequently issued an opinion on October 29, 2020, in which it stated that neither the Township nor the Zoning Board had standing to appeal its September 16, 2020 order and, consequently, that these appeals should be quashed. Trial Ct. Op., 10/29/20 at 3-5. The Trial Court, however, did not use this opinion to address the substantive reasoning behind its order. *See id.*

4

## II. Discussion

### A. Horizon House's Motion to Quash

Prior to considering the merits of the Township's and the Zoning Board's respective appeals, we address Horizon House's Motion to Quash. In this motion, Horizon House argues that both of these appeals must be quashed, as the Township never formally intervened at the Trial Court level and the Zoning Board is not an aggrieved party in this matter. Motion to Quash, ¶¶5-6; Horizon House's Br. at 11-13.

### 1. Township's Standing

With regard to the Township's appeal, we agree with Horizon House that the appeal must be quashed. Per Section 1004-A of the Pennsylvania Municipalities Planning Code (MPC),[6]

> [w]ithin the 30 days first following the filing of a land use appeal, if the appeal is from a board or agency of a municipality, the municipality and any owner or tenant of property directly involved in the action appealed from may intervene as of course by filing a notice of intervention, accompanied by proof of service of the same, upon each appellant or each appellant's counsel of record. All other intervention shall be governed by the Pennsylvania Rules of Civil Procedure.

53 P.S. § 11004-A. This provision "makes it relatively easy for a municipality to intervene [in a land use appeal at the court of common pleas level] by merely filing a notice within thirty days of the filing of the appeal." *Zoning Hearing Bd. of City of Erie v. Burrows*, 584 A.2d 1072, 1074 (Pa. Cmwlth. 1990). A municipality's failure to abide by this intervention requirement for land use matters, however, is usually fatal to its ability to challenge an unfavorable ruling by a court of common pleas

---

[6] Act of July 31, 1968, P.L. 805, *as amended*, added by the Act of December 21, 1988, P.L. 1339.

through an appeal to our Court. *Gilbert v. Montgomery Twp. Zoning Hearing Bd.*, 427 A.2d 776, 779 (Pa. Cmwlth. 1981).

We elaborated on this general rule in *Brendel v. Zoning Enforcement Officer of Borough of Ridgway*, 780 A.2d 750 (Pa. Cmwlth. 2001). In that matter, a resident appealed a zoning citation to their municipality's zoning hearing board (ZHB), which then held a hearing regarding the appeal. 780 A.2d at 750. The municipality was accorded party status by the ZHB and participated in the hearing through its zoning enforcement officer. *Id.* The ZHB ultimately upheld the citation, whereupon the affected resident appealed to the Court of Common Pleas of the Fifty-Ninth Judicial District (Common Pleas). *Id.* at 750-51. Though the municipality submitted briefs and evidence to Common Pleas, it did not enter an appearance or file a notice of intervention. Common Pleas reversed the ZHB's decision, which prompted the municipality to appeal to the Commonwealth Court. *Id.* at 751. Upon review, our Court granted the resident's motion to quash the appeal, due to the municipality's failure to intervene and consequent lack of standing. *Id.* at 751-52. As our Court explained,

> the [municipality] suggests that since it was substantively an intervenor, [due to its level of involvement before Common Pleas,] the procedural requirements [governing intervention] should be discharged. We disagree. This Court has previously stated:
>
> > Although Appellant was represented before the [ZHB] and participated at the trial court level by filing a brief and participating in oral argument, it failed to petition to intervene. Nor did Appellant indicate that it intended or was attempting to intervene. Participation at the trial court level without intervening is insufficient to be accorded standing to appeal. *See Dethlefson Appeal*, . . . 254 A.2d 6 ([Pa.] 1969) (participation as a witness at the trial court level is not sufficient to establish a right

6

to review); *Flaherty Appeal*, . . . 450 A.2d 802 ([Pa. Cmwlth.] 1982) (one who appears as an *amicus curiae* before the trial court is not a party and does not have standing to appeal).

*Stanbro v. Zoning Hearing [Bd.] of Cranberry [Twp.]*, . . . 566 A.2d 1285, 1287 ([Pa. Cmwlth.] 1989).

The purpose of the MPC intervention requirements is to put [an appellee] on notice as to the status assumed by the [municipality] in the action. Mere participation in a matter before a court does not accord the participant "party" status; it would be unreasonable to place the burden on parties to challenge proactively the status of every non-party participant. If a municipality, currently not a party to the trial court proceeding in a land use appeal wishes to intervene, then that municipality must come forward, file a notice to intervene and then serve it on each counsel of record as required by the MPC. 53 P.S. § 11004-A.

*Id.* at 751-52.

*Brendel* is thus strikingly similar to the matter currently before us. Like the municipality in *Brendel*, the Township actively participated in front of both the Zoning Board and the Trial Court, but, as noted *supra*, it never sought or declared intervenor status at the Trial Court level. Therefore, like the municipality in *Brendel*, the Township did not properly establish its standing before the lower tribunal. *See Gilbert*, 427 A.2d at 779 ("a municipality will have standing to bring a zoning appeal to this [C]ourt only if it properly becomes a party before the lower court, as an appellant or intervenor"). Consequently, we grant Horizon House's Motion to Quash with regard to the Township's appeal, due to the Township's failure to formally intervene before the Trial Court.[7]

---

[7] While the Township's attorney entered his appearance before the Trial Court, unlike in *Brendel*, this notice did not constitute a petition to intervene. Furthermore, this appearance was entered on June 30, 2020, or more than six months after Horizon House appealed to the Trial Court. Hence, even if we were to generously construe this entry of appearance as the Township's notice of intervention, that "notice" would have been procedurally invalid, as Section 1004-A only **(Footnote continued on next page…)**

## 2. Zoning Board's Standing

We, however, disagree with Horizon House that the Zoning Board's appeal must be completely quashed for lack of standing. It is well-settled that, in general, "a zoning hearing board does not have standing to appeal an order because it is not 'injuriously affected' by the order." *Burrows*, 584 A.2d at 1074 (quoting *Appeal of Bd. of Adjustment, Landsdowne Borough*, 170 A. 867, 868 (Pa. 1934)). As such, "a local zoning hearing board cannot appeal a reversal of its decisions on the merits by the courts of common pleas." *Becker v. Zoning Hearing Bd. of Borough of Sewickley*, 874 A.2d 1270, 1274 (Pa. Cmwlth. 2005).

Even so, there is an exception to this rule, whereby a ZHB has standing when it appeals "a decision that adversely affects its legislatively conferred functions, duties, and responsibilities as opposed to [one] that merely reverses its decision as a neutral third-party tribunal[.]" *Id.* In *Becker*, a resident applied to the Borough of Sewickley's ZHB for a variance that would enable the resident to build a fence that exceeded the height limits imposed by the Borough's zoning ordinance. *Id.* at 1271-72. The ZHB denied the application, prompting the resident to appeal that decision to the Court of Common Pleas of Allegheny County. *Id.* at 1272-73. During the pendency of that appeal, the Borough and the resident negotiated a settlement, without the ZHB's knowledge or involvement, which allowed the resident to build the fence as proposed and without obtaining variance relief. *Id.* at 1273. This settlement was approved by the Court of Common Pleas of Allegheny County via consent order, which the ZHB then appealed to our Court. *Id.* On appeal, the Court in *Becker* vacated the consent order and remanded the matter to the Court of Common Pleas of Allegheny County, with instructions that the ZHB be allowed to

enables municipalities to intervene by right within 30 days of a land use appeal's filing. 53 P.S. § 11004-A.

8

fully participate in the matter. *Id.* at 1275-76. In doing so, the *Becker* Court reasoned that "the [ZHB] is not seeking to appeal a reversal of its decision as a tribunal, but instead is appealing an order that allegedly infringes upon its exclusive jurisdiction to decide whether or not applicants are entitled to variance relief under the local [zoning] ordinance and the [MPC]." *Id.* at 1274. Elaborating on this point, the *Becker* Court concluded that, by settling the matter without the ZHB's agreement or involvement, the Borough had violated the terms of its own zoning ordinance and had "vitiated the [ZHB's] authority under the MPC as the local agency charged with exclusive jurisdiction over applications for relief from the provisions of a local ordinance within its municipal borders." *Id.* at 1274-75.

While the *factual* circumstances of this matter differ from that of *Becker*, the *legal* reasoning is still instructive. Here, the Zoning Board effectively mounts a two-pronged challenge through its appeal of the Trial Court's September 16, 2020 order. First, it argues that it does not have legal authority to issue a use and occupancy permit to Horizon House for the Property and, thus, cannot comply with the Trial Court's directive that it do so. Zoning Board's Br. at 23-24. Second, it challenges the merits of the Trial Court's order. *Id.* at 24-31. While, per the aforementioned case law, the Zoning Board *does not* have standing to appeal the Trial Court's partial reversal of its November 20, 2019 decision, it *does* have standing to appeal the portions of the Trial Court's September 16, 2020 order "that adversely affect[] its legislatively conferred functions, duties, and responsibilities[.]" *Becker*, 874 A.2d at 1274. The Zoning Board thus has standing to appeal the portion of the Trial Court's September 16, 2020 order directing it to issue a use and occupancy permit, in light of the Zoning Board's claim that doing so would exceed the powers with which it is vested. For these reasons, Horizon House's Motion to Quash is granted in part,

9

regarding the Zoning Board's challenge to the Trial Court's partial reversal of the Zoning Board's November 20, 2019 decision. In addition, we deny the Motion to Quash in part, as to the section of the Trial Court's September 16, 2020 order that directs the Zoning Board to issue a use and occupancy permit.

## B. The Township's and Zoning Board's Respective Legal Authority to Issue a Use and Occupancy Permit

Turning to the remaining issue, the Zoning Board argues that, per the MPC and the Township's Zoning Ordinance, the Township itself, rather than the Zoning Board, has sole authority to issue use and occupancy permits. *See* Zoning Board's Br. at 23-24. Resolution of this issue therefore requires us to interpret the relevant statutory and ordinance language, in order to ascertain the bounds of the Zoning Board's powers and determine whether its authority encompasses the ability to dispense such permits. As our Supreme Court has stated:

> "[T]he objective of all interpretation and construction of statutes is to ascertain and effectuate the intention of the legislature." *Bayada Nurses*[*, Inc.*] *v. Dep*[*'t*] *of Lab*[*. &*] *Indus.*, . . . 8 A.3d 866, 880 ([Pa.] 2010) (citing 1 Pa. C.S. § 1921(a)). Generally, the best indication of the General Assembly's intent is the plain language of the statute. "When the words of a statute are clear and free from all ambiguity, they are presumed to be the best indication of legislative intent." *Chanceford Aviation v. Chanceford Twp. Bd. of Supervisors*, . . . 923 A.2d 1099, 1104 ([Pa.] 2007) (citations omitted). When, however, the words of a statute are ambiguous, a number of factors are used in determining legislative intent. Furthermore, "it is axiomatic that in determining legislative intent, all sections of a statute must be read together and in conjunction with each other, and construed with reference to the entire statute." *Hoffman Min*[*ing Co., Inc.*] *v. Zoning Hearing Bd.* [*of Adams Twp., Cambria Cnty.*], . . . 32 A.3d 587, 592 (Pa. 2011) (citation omitted). Moreover, statutes are considered to be *in pari materia* when they relate to the same persons or things, and statutes or parts of statutes

10

*in pari materia* shall be construed together, if possible. 1 Pa. C.S. § 1932. Courts are required, if possible, to give effect to each provision or subsection of the statute. *Id.*, § 1921(a).

*Allstate Life Ins. Co. v. Com.*, 52 A.3d 1077, 1080-81 (Pa. 2012).

> Courts may resolve an ambiguity by considering the following factors: 1) the occasion and necessity for the statute; 2) the circumstances under which it was enacted; 3) the mischief to be remedied; 4) the object to be attained; 5) the former law, if any, including other statutes upon the same or similar subjects; 6) the consequences of a particular interpretation; 7) the contemporaneous legislative history; and 8) legislative and administrative interpretations of such statute. 1 Pa. C.S. § 1921(c). We are also mindful that "the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable" and "the General Assembly intends to favor the public interest as against any private interest." 1 Pa. C.S. § 1922(1), (5).

*Woodford v. Ins. Dep't*, 243 A.3d 60, 74 (Pa. 2020). These rules of construction are applicable in equal measure to local ordinances. *Tri-Cnty. Landfill, Inc. v. Pine Twp. Zoning Hearing Bd.*, 83 A.3d 488, 509-10 (Pa. Cmwlth. 2014).

Here, both the MPC and the Zoning Ordinance define the contours of the Zoning Board's authority. Section 909.1(a) of the MPC[8] articulates the jurisdictional powers of ZHBs as follows, in relevant part:

> The zoning hearing board shall have exclusive jurisdiction to hear and render final adjudications in the following matters:
>
> . . . .
>
> (3) Appeals from the determination of the zoning officer, including, but not limited to, the granting or denial of any permit, or failure to act on the application therefor, the issuance of any cease and

---

[8] Added by the Act of December 21, 1988, P.L. 1329.

11

> desist order or the registration or refusal to register any nonconforming use, structure or lot.

53 P.S. § 10909.1. The Zoning Ordinance's language on this point is identical to that of Section 909.1. *See* Zoning Ordinance § 205-142.C.

In addition, the Zoning Ordinance sets forth the particular responsibilities of the Township's zoning officer. Per Section 205-136, in relevant part,

> [t]he provisions of [the Zoning Ordinance] shall be enforced by an agent, to be appointed by the Board of Township Supervisors, who shall be known as the "Zoning Officer." . . . The Zoning Officer shall have authority to issue zoning permits only for construction and uses which are in accordance with the general requirements of this chapter. Zoning permits for construction and uses which are permitted by variance or special exception to such general requirements shall be issued by the Zoning Officer only upon order of the Zoning . . . Board. The Zoning Officer shall issue no permits for the construction or use of any land or building unless it also conforms to the requirements of all other ordinances of [the] Township and with the laws of the [C]ommonwealth.

*Id.*, § 205-136.

Additionally, Township Ordinance Number 577,[9] titled "Use and Occupancy and Temporary Access Certificates" (UO Ordinance), provides us with additional clarity. Therein, "use and occupancy certificate" is defined as "[a] certificate issued by the Township, stipulating that the property meets all ordinances and codes and may be used or occupied as intended." UO Ordinance § 190-3.A. In addition, the UO Ordinance provides that

> [t]he Township will issue a use and occupancy certificate in the following manner:
>
> A. If the inspection reveals no violations.

---

[9] East Norriton Ordinance No. 577, Montgomery County, Pa., (2018), available at https://ecode360.com/8113961 (last accessed July 7, 2021).

12

B. If the inspection reveals at least one violation, but no substantial violations, the Township shall issue a temporary use and occupancy certificate.

C. If the inspection reveals at least one substantial violation, the Township shall specifically note those items on the inspection report, and shall issue a temporary access certificate.

*Id.*, § 190-7.

We draw three conclusions from these provisions. First, the Township, operating through its zoning officer, is the entity that may issue use and occupancy permits in East Norriton. Second, while the Zoning Board has the power to consider appeals pertaining to the Township's grant or denial of such permits and, by virtue of its adjudicative powers, may direct the Township to take specific kinds of action, it is not authorized by law to issue the permits itself. Third, since the Zoning Board cannot itself bestow a use and occupancy permit upon Horizon House, the Trial Court committed legal error by nevertheless commanding it to do so.

### III. Conclusion

In summation, we grant Horizon House's Motion in part and quash the Township's appeal in full, due to the Township's failure to formally intervene in this matter before the Trial Court, and quash the Zoning Board's appeal in part, regarding its challenge to the Trial Court's partial reversal of the Zoning Board's November 20, 2019 decision. Furthermore, we grant the Zoning Board's appeal in part and reverse the portion of the Trial Court's September 16, 2020 order directing the Zoning Board to issue a use and occupancy permit to Horizon House for the Property.

_____
ELLEN CEISLER, Judge

13

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Horizon House, Inc.          :

:

v.              :   No. 1027 C.D. 2020

:

East Norriton Township Zoning   :

Hearing Board and East Norriton  :

Township             :

:

Appeal of: East Norriton Township :

Zoning Hearing Board       :

Horizon House, Inc.          :

:

v.              :   No. 1048 C.D. 2020

:

East Norriton Township Zoning   :

Hearing Board and East Norriton  :

Township             :

:

Appeal of: East Norriton Township :

## **O R D E R**

AND NOW, this 8th day of July, 2021, it is hereby ORDERED:

1. Appellee Horizon House, Inc.'s motion to quash is GRANTED IN PART and DENIED IN PART;

2. Appellant East Norriton Township's appeal, docketed under No. 1048 C.D. 2020, is QUASHED IN FULL;

3. Appellant East Norriton Township Zoning Hearing Board's (Zoning Board) appeal, docketed under No. 1027 C.D. 2020, is QUASHED IN PART, with regard to the portions of that appeal challenging the Court of Common Pleas of Montgomery County's (Trial Court) partial reversal, through its September

16, 2020 order, of the Zoning Board's November 20, 2019 decision in this matter;

4. The Zoning Board's appeal is GRANTED IN PART;

5. The Trial Court's September 16, 2020 order is REVERSED IN PART, with regard to the portion of that order directing the Zoning Board to issue a use and occupancy permit to Horizon House for a property located at 2921 Stony Creek Road in East Norriton, Pennsylvania.

_____
ELLEN CEISLER, Judge